WHITE et al. v. HINTON et al.

(August 22, 1892.)

STATUTES—ENACTMENT—EVIDENCE—JUDGE—PUBLICATION—OPENING JUDGMENT—INSANITY—APPEAL—QUESTIONS DECIDED.

1. The journals of both houses of the legislature and the records of the secretary's office, showing that an act of a certain date was passed and approved on that date, are conclusive.

2. An act attaching a county to a judicial district, and providing additional compensation for the judge for holding court in such county, does not give the judge a pecuniary interest in causes tried therein.

3. Act Dec. 15, 1877, attaching Uinta county to the second judicial district, is within the special authority granted the assembly of Wyoming territory by Rev. St. U. S. §§ 1913, 1918, 1919, to organize, alter, and modify the several judicial districts, to assign to them the judges appointed for the territory, and to fix and alter the times and places of holding the district courts in such manner as the legislative assembly deems proper and convenient.

4. Where the validity of an act giving jurisdiction to the trial court is attacked on appeal, and the appellate court affirm or reverse the judgment, thereby treating it as the judgment of a lawful court in the exercise of its lawful jurisdiction, such decision of the appellate court is an affirmance of the validity of the act, though it was not adverted to in the opinion, and it cannot be contended, in a subsequent case, that such point was not decided.

5. Under a statute providing for service of process by publication in a newspaper printed in the county, or, if none is printed there, then in a newspaper printed in the territory and of general circulation in the county, a finding of the trial court that defendants were duly served is not inconsistent with proof of publication on file, which shows a publication for the required time in a certain newspaper of general circulation in the county, but does not show where the paper was printed, as jurisdiction depends on the fact of service, and not on the proof.

6. Defect in the notice in a foreclosure suit or in the service is not sufficient to authorize the opening of a judgment against defendant, unless a good defense is also shown.

7. A merely formal amendment of a bill of complaint does not require a new service on a defendant who had not appeared to the original bill.

8. A judgment or decree against an insane person is not void.

Appeal from district court, Uinta county; SAMUEL T. CORN, Judge.

Bill by Charles M. White, administrator of the estate of Samuel H. Winsor, deceased, and George Ames Winsor and Marie Booth Winsor, by their next friend, Emma A. Winsor, suing also in her own behalf, against William Hinton and the Union Pacific Railway Company, to vacate a decree of foreclosure of mortgage against Samuel H. Winsor for want of proper service and of jurisdiction in the court decreeing foreclosure, and on the ground of Winsor's insanity at time of commencement of suit. From a judgment sustaining a demurrer to the bill, plaintiffs appeal. Affirmed.

William Ware Peck, for appellants.
Lacey & Van Devanter, for appellees.

CONAWAY, J. On November 30, 1874, Samuel H. Winsor made his promissory note in favor of William Hinton for the sum of $2,145, with interest at 15 per cent. per annum from date. At the same time, and to secure payment of this note, Winsor executed to Hinton a mortgage upon the realty in controversy in this suit. In May, 1876, Winsor removed to the state of Indiana, where he resided continuously from that time until his death, in October, 1881. He left, as his only surviving heirs, Emma A. Winsor, his widow, and two minor children of himself and the said Emma, by name George Ames Winsor, born January 27, 1873, and Marie Booth Winsor, born January 14, 1875. These heirs and Charles M. White, administrator of the estate of said Samuel H. Winsor, in Wyoming, are the complainants in this suit. On March 15, 1877, Hinton commenced suit for the foreclosure of his mortgage in the district court of the third judicial district for Uinta county. Winsor was defendant therein, as also the Uinta Coal & Mining Company, but this company passed out of the suit by plea of disclaimer. Uinta county was made part of the second judicial district by an act of the legislative assembly of Wyoming territory, approved December 15, 1877, and during the pendency of the foreclosure suit; and such proceedings were had in said suit that, on July 31, 1878, the second judicial district court, sitting within

and for Uinta county, made, in due form, a decree of foreclosure of said mortgage finding, among other things, that due service had been made upon both defendants, and that there was due upon the note $3,088.80. Pursuant to this decree, the master sold the realty in due course of law to Hinton for $2,700, that being the highest bid. This sale was confirmed, and a deed ordered accordingly by said second judicial district court, sitting within and for Uinta county, at its July term, and on the 6th day of July, 1878. This deed never passed to Hinton. He took immediate possession of the property, and on September 5, 1878, deeded it, and delivered possession to the Union Pacific Railroad Company, the predecessor in title and interest of one of the defendants herein, the Union Pacific Railway Company. The service of notice upon Winsor in the foreclosure suit was by publication. The law then in force required service, when made by publication, to be made in a newspaper printed in the county where the suit was begun, or, if no newspaper was printed there, in a newspaper of general circulation in such county, and printed in Wyoming territory. The affidavit of publication on file shows publication of a notice in due form for the requisite time in the Evanston Age, a newspaper of general circulation in Uinta county. It does not show that the Evanston Age was printed in Uinta county, or that there was no newspaper printed in Uinta county, and that the Evanston Age was printed elsewhere in the territory. This affidavit is the only evidence of a constructive service furnished in the foreclosure suit. Winsor became insane after the execution of his note and mortgage to Hinton, and before the commencement of the foreclosure suit, and continued insane until his death. No appearance in that suit was made by or for him, and no guardian ad litem was appointed, and he had no general guardian in or out of the territory. How his affairs were managed during his insanity does not appear. The defendant the Union Pacific Railroad Company and the defendant William Hinton have taken from said property, and have appropriated, sold, and consumed, quantities of coal, largely exceeding in value the amount of Hinton's note, with interest, above cost of mining, handling, marketing, and all expenses therewith connected. It is asked in this suit that the decree of foreclosure, the master's sale to Hinton,

and Hinton's deed to the Union Pacific Railroad Company be annulled, vacated, and held for naught, and the Union Pacific Railway Company be perpetually enjoined from asserting any title to the property in controversy under its deed, and extracting coal from or committing waste upon said property, and that the complainants be admitted to redeem from said mortgage, and that an accounting be had of the coal taken, and of its value above expenses, and the amount each of said defendants is responsible for, and the amount to which each of said complainants is entitled, and that the court decree accordingly. To the bill of complaint, alleging, substantially, as above, and asking relief substantially as stated, a general demurrer was interposed. The district court sustained the demurrer, and complainants appeal. It is not to be overlooked, however, that complainants asked that Hinton's deed to the Union Pacific Railroad Company should be considered as extinguishing his mortgage. The claim is that the deed is void, but still has the effect to extinguish the mortgage. This cannot be the case. So, in effect, the relief asked is, as stated, to declare void, vacate, or annul the decree of foreclosure, the master's sale thereunder to Hinton, and Hinton's deed to the Union Pacific Railroad Company, to admit complainants to redeem from the mortgage, and to have an accounting. Complainants claim that the act of December 15, 1877, attaching Uinta county to the second judicial district, was invalid, and never became law; that the bill was really introduced, passed, transmitted to the governor, approved, and returned by him, on December 16th, and after the session of the legislature had expired by operation of law; and the bill of complaint alleges that, "in order to give the aspect of validity to said proceedings in the matter of the introduction, passage, transmission, approval, and return of the bill, and thus falsely and unlawfully, the bill was dated on the 15th day of said December, all the proceedings of said houses in respect thereto before its transmission to the governor, the date of its transmission to the governor, and of its return and reception by the assembly were entered upon the journals as of the said 15th day of December, making the journals falsely and unlawfully read as if all said proceedings in the matter of the bill transpired on that day and that the

governor, falsely and illegally concerting with the legislature, dated the approval with the last-mentioned date. That afterwards, and on the 16th day of December, and before noon thereof, and with like want of authority, capacity, and legality, the members of said house of representatives and said council, in the name of said fifth legislative assembly, the session of which had ceased to exist in law on the expiration of the said 15th day of December, passed a joint resolution of adjournment *sine die*, and thereupon dissolved and departed." The bill of complaint elsewhere alleges that the legislature convened at noon, November 6th. The act of congress controlling the session limited its duration to 40 days. This period of 40 days, reckoning consecutive days, holidays and all, would terminate at noon, December 16th.

It is said the law knows no fractions of days, but counts each fraction as a whole day. But this rule is by no means universal. It is in a measure abrogated by our Civil Code, § 2341: "Unless otherwise specially provided, the time within which an act is required by law to be done shall be computed by excluding the first day, and including the last, and, if the last be Sunday, it shall be excluded." And this is a reasonable rule for computing time, independently of statute. The rule of counting fractions of days as whole days is doubtless good law in its proper and accustomed application. But it is technical and unnatural. In ordinary language, a day commencing at noon means a day closing at noon of the following day. The technical rule of law, making a part of a day a whole day, is not recognized as controlling legislative days. A calendar day, even, is not necessarily a legislative day. *A fortiori* a fraction of a calendar day is not necessarily, or even presumptively, a legislative day. By a long established practice of congress, a calendar day is not recognized as limiting a session of any legislative day. Dating legislative proceedings of a day's session prolonged into the morning hours of the succeeding day as of the date when the diurnal session began seems to have the sanction of custom in both houses of congress, and such dating is not considered either false or unlawful. Whether the limitation of 40 days means 40 consecutive days, or 40 days of actual legislative session, excluding Sundays and other days when the legislature does not sit, is a question upon

which there seems to be some conflict of judicial opinion. Some of the best-considered cases hold that the limitation allows 40 full days for actual legislative work. But in this case the bill of complaint shows a final adjournment before noon of the 16th day of December, which was within the 40-day limit from noon of the 6th day of November. In addition to this, it appears from the bill of complaint that the journals of both houses of the legislature and the records of the secretary's office show that the act of December 15, 1877, was passed by the legislature, and approved by the governor, December 15th. By a *consensus* of authority almost unanimous, these records are conclusive. Parol testimony cannot be admitted to impeach them. From these records the statutes are published for the information of the people and the courts. To these records resort is had in case of any question as to the correctness of the published statutes. On these records reliance is had by the bench, the bar, and the public, of necessity and of right. Resort cannot be had to the recollection of individuals to show what the law is or is not, or to impeach these solemn records made by the members and officers of the legislature, and by the governor and the secretary under the sanction of their official oaths, and to prove against the records, and in spite of them, the astounding proposition that the governor and both houses of the legislature falsely and illegally concerted together to falsify the record of the two houses and of the secretary's office. It is possible that all this might, in the course of history, occur. It is much more probable that parol testimony to that effect would, in any particular instance, be mistaken or false. If it should result from these principles that on rare occasions validity should be given to legislation not strictly regular in its enactment, the evil would be much less than the unsettling of the evidentiary foundation of all statutory law, and the weakening of the public faith in all existing legislative enactments, which would result from throwing open the records of legislative action to impeachment by parol testimony whenever the interest or caprice of individuals may prompt them to such a course. It is not to be tolerated that the courts or the people should depend upon or resort to the recollection of individuals for the statutory law.

It is further argued by counsel for complainants that the provisions of the act of

White v. Hinton.

December 15, 1877, attaching Uinta and Sweetwater counties to the second judicial district, and assigning Judge BLAIR to hold the terms of the district court there, were not intended to take effect until Crook and Pease counties, constituting the new third district, should be organized, and courts established therein. The act does not read so. The language indicates that these provisions were to take effect at once. It is evidently so understood by counsel for complainants. Their brief says: The statute discloses on its face that its direct "object was to displace from his sphere the judge whom it assigns to the new district." These two propositions of counsel are inconsistent. Both cannot be correct. Perhaps neither is. We are not prepared to say that either the object or the effect of the act was to displace from his sphere the judge whom it assigned to the new district. Part of his sphere of judicial action was as justice of the supreme court. This was not interfered with. The act seems to be within the general grant by congress of legislative authority to the territories, extending to all "rightful subjects of legislation not inconsistent with the constitution and laws of the United States," and within the special authority granted to the legislative assemblies of Wyoming and other territories to "organize, alter, and modify the several judicial districts thereof in such manner as each legislative assembly deems proper and convenient," and to "assign the judges appointed for such territories, respectively, to the several judicial districts thereof in such manner as each legislative assembly deems proper and convenient," and to "fix and alter the times and places of holding the district courts for such territories, respectively, in such manner as such legislative assembly deems proper and convenient." Rev. St. U. S. 1878, §§ 1851, 1913, 1918, 1919.

Whether legislation is wise or unwise, politic or impolitic, is not a judicial question. The question here is whether the act is upon a rightful subject of legislation, and whether it is consistent with the constitution and laws of the United States. The subject of the act is certainly a rightful subject of legislation, and it does not seem to conflict with any provision of the constitution or laws of the United States. It seems rather to be an ordinary and regular exercise of the legislative power. It is insisted by counsel, *arguendo*, that this act displaces a judge,

and, if it can stand, the legislature may displace all the judges, and so close the courts. We have already intimated the opinion that there is no displacement of a judge. When the legislature attempts to close the courts, in whole or in part, there will be time to consider its authority to do so. The legislation in question makes no such attempt, but provides courts for all counties within its scope.

It is further urged that Judge BLAIR was disqualified to hold the courts in Uinta and Sweetwater counties by pecuniary interest, because the act provided additional compensation for this service. This contention is without reason. That a judge of a court receives compensation for his services never disqualifies him. It does not give him a pecuniary interest in any cause he tries. Every judge necessarily determines for himself, in the first instance, the territorial extent of the jurisdiction of his court. We have considered the principal objections urged against the validity of the act of December 15, 1877, and to the jurisdiction of the second judicial district court and the judge thereof to sit in Uinta county, in 1878, because it has been claimed by counsel that these questions were evaded, and never decided, by the territorial supreme court. We are satisfied, however, that the better view is that these questions are *res judicata*, and that the principle of *stare decisis* applies. The legislative records show the act of December 15, 1877, to be a regularly enacted law. It has been published as such in accordance with law and custom. It has been recognized as valid subsisting law by the bench, the bar, and the public. No less than seven cases were carried up in 1878 from the second judicial district court for Uinta county to the supreme court of the territory, and one from the same court for Sweetwater county. In each of these cases the validity of the act of December 15, 1877, and the jurisdiction of the second judicial district court and its judge to sit in Uinta and Sweetwater counties, were attacked in a dissenting opinion by the judge who was assigned by the act to the new district composed of the unorganized counties of Pease and Crook. In some of these cases the same points were made by counsel, and in some not. In none could they have been overlooked or evaded. The points are jurisdictional. The cases are all reported in volume 2 of the Wyoming Reports. They are Hinton v. Winsor, 2 Wyo. 206; Gar-

banati v. Beckwith, Id. 213; Garbanati v. Beckwith, Id. 216; Garbanati v. County Com'rs, Id. 257; County Com'rs v. Johnson, Id. 259; Garbanati v. Hinton, Id. 271; Lee v. Cook, Id. 312; and Territory v. Conley, Id. 331.

The case of Hinton v. Winsor was an appeal by the codefendant of Winsor from the decree of foreclosure, which is attacked as void in the present suit. The appeal was dismissed, Peck, J., dissenting, and arguing that the decree should be reversed for want of jurisdiction in the district court of the second judicial district to sit in Uinta county. Neither in this nor either of the other cases is this point discussed or expressly decided by the court, but the judgments and decrees are treated as those of a subsisting court in the exercise of its lawful jurisdiction, and have ever since stood as such. Language could not be more effective to establish the jurisdiction of the court and the judge thereof to sit in Uinta county. And such language was not essential. It is not necessary to preface every decision of an appealed case with the declaration that the trial court had jurisdiction. Some things go without saying. A finding by a court or jury that an event occurred at the rising of the sun is a finding that it was in the morning. When a court adjudges the realty of a decedent's estate to the heir and the personalty to the administrator, it is a decision that such is the law. When a court sentences a convict to be hanged for murder, it is a decision that death by hanging is the penalty for murder. When an appellate court considers and affirms a judgment or decree of a *nisi prius* court, or reverses and orders a new trial, it is a decision that the tribunal appealed from is a court, and the judgment or decree appealed from is the result of the exercise of its lawful jurisdiction. Especially so where it is shown that the question of jurisdiction was in any manner brought to the attention of the appellate court. It is with courts as with mankind in general. What they say may be important, but not so important as what they do. It is even possible that a decision may be correct, and founded on correct principles not expressed, and yet the accompanying opinion be but a bundle of errors. Conversely, the opinion may be right, but the decision wrong. It is sometimes claimed that, because a point involved in a decision is not discussed in the opinion of the court, it is overlooked, and not decided.

Nothing can be more misleading than this idea. It is oftener the case that the unmentioned point is not controverted by either party to the litigation, and is considered too clear to need argument or illustration. Every judicial decision is an affirmation of every legal proposition necessarily involved in the decision, and without which the decision cannot be correct, and this is so, although there be no single proposition of law expressed.

In none of these cases taken from Uinta county to the supreme court of the territory in 1878 was the question of the jurisdiction of the court of the second judicial district to sit in Uinta county expressly decided. But in each instance the judgment or decree was recognized and treated as the judgment or decree of a lawful court in the exercise of its lawful jurisdiction. No elaboration of argument could have made this clearer than it is. These decisions of the court of last resort were all made at the March term, 1880. Now, after the lapse of more than 12 years, we are asked to say, in effect, that these decisions are erroneous, and that the proceedings, judgments, and decrees of the two terms of the district court held in Uinta county, and the two terms in Sweetwater county, in 1878, are absolutely void. Important interests have attached and reposed upon these proceedings, judgments, and decrees. A new line of decision now upon this matter would produce confusion and disaster. The extent of these evil results it is impossible to estimate or foresee.

The jurisdiction of the district court to hear and determine the foreclosure suit of Hinton v. Winsor is also attacked on the ground of a defect of proof of service of notice of suit upon Winsor. The service was by publication. The statute then in force required publication to be made in a newspaper printed in the county, or, if none were printed there, in a newspaper printed in the territory, and of general circulation in the county. The proof of publication on file shows publication in the Evanston Age, a newspaper of general circulation in the county. It does not show where it was printed. But there is a finding by the court that both defendants were duly served. There is nothing inconsistent with this finding in the proof of publication. The Evanston Age might have been, and no doubt was, "printed" in Uinta county. This is not denied by complainants by their pleading. The ju-

Frontier ˜ an l & Cattle Co. v. Baldwin.

risdiction depends upon the fact of service, and not upon the proof. The proof may be amended in accordance with the fact at any time. No amendment is necessary here, because the record already shows due service, which is not denied.

It is also objected that the notice was signed by the party complainant only, and that it should have been signed by the register in chancery. We do not so understand the law. But defect in the notice or in the service, one or both, is not sufficient to authorize the opening up of a decree or judgment. There must also be a showing of merits,—a good defense. No defense whatever is set up in the present suit. The decree of foreclosure is shown to be the proper decree in the former suit. There was an appearance in the foreclosure suit, and a motion by Winsor's codefendant to strike the bill of complaint from the files for want of a caption stating the title of the cause. This resulted in the filing, on leave, of an amended bill of complaint, which was simply the original bill, with the caption prefixed. It is urged that this necessitated a new service as to Winsor, who made no appearance. Such might be the effect of a material amendment to the bill. But in the case under consideration, the amendment was merely formal. There was no substantial change in the bill. It was the same bill, rewritten, with the caption prefixed. There was no change of parties, no change in statement of facts, no change in the relief sought; and, again, to make this point available there should be a showing of a good defense, which is not made.

It is urged that the decree of foreclosure is void as to Winsor, because he was insane at the time of the bringing of the suit against him, and continued insane until his death. But a judgment or decree against an insane person is not void. If attacked by suit brought within the time limited by statute, after the removal of the disability the decree may be opened up to admit of a valid defense, which must be set out. In this case the suit is not brought in time; neither is there any defense to the foreclosure suit set forth. It is alleged that the master never made any deed to Hinton after selling the property to him. This shows no right of action in the complainants, but rather in the defendant company to have its title perfected and quieted by the execution and delivery of the deed. In addition, it would seem that the present suit is brought in a manner and at a time

when none of the numerous objections urged could be made available, except the single objection to the jurisdiction. It is in effect admitted that neither the legal method for opening up judgments nor reviewing decrees has been followed, nor the law or practice in equity for either of these purposes complied with. Defendants' citations of authorities to establish these two propositions are not questioned as to their sufficiency, but are considered as inapplicable by complainants in their brief, because the decree of foreclosure is assailed as nonjurisdictional and absolutely void,—in the language of the brief, as the decree of a "court which was not a court." There seems to be, in the last analysis, the only ground upon which complainants rely. The judgment and decree of the district court sustaining the demurrer of the defendants to the bill is affirmed.

GROESBECK, C. J., and MERRELL, J., concur.