ALASKA PACIFIC FISHERIES v. TERRITORY OF ALASKA.*

(Circuit Court of Appeals, Ninth Circuit.   September 5, 1916.)

No. 2709.

1. LICENSES ⊂⊃3—IMPOSITION—ALASKAN FISHERIES.

Organic Act Alaska Aug. 24, 1912, providing for a territorial Legislature, and declaring that the federal Constitution and all laws not locally inapplicable shall be effective, and shall remain in force until altered, amended, or repealed by Congress or the Legislature, provides, in section 3, that the territorial Legislature shall not have power to alter, amend, modify, or repeal existing laws on enumerated subjects including the fish and game laws applicable to Alaska and federal laws providing for taxes on business and trade, but the section further declares that it shall not operate to prevent the territorial Legislature from imposing other and additional taxes or licenses, while sections 9 and 20 of the act provide that the legislative power of the territory shall extend to all rightful subjects of legislation, and reserve to Congress the right to nullify any law passed by the territorial Legislature.  Act June 26, 1906, c. 3547, 34 Stat. 478, for the protection and regulation of fisheries of Alaska, provides that every person or corporation carrying on the business of canning, curing, or preserving fish, or manufacturing fish products, shall, in lieu of all other license fees and taxes therefor, pay enumerated license taxes computed on the output.  The act further provides for exemption of license fees on canned salmon in consideration of liberation of salmon fry.  On passage of the Organic Act, no general property tax laws obtained in Alaska.  *Held* that, in view of that fact, and the necessity of obtaining revenue for the territory, Act Alaska April 29, 1915 (Laws 1915, c. 76), amending Act May 1, 1913 (Laws 1913, c. 52), which imposed taxes on the owners of fish traps, whether fixed and floating, or dummy traps, is valid;  the Legislature being authorized to impose additional license fees, and the act not violating the federal regulation of fisheries.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 2;  Dec. Dig. ⊂⊃3.]

2. LICENSES ⊂⊃7(7)—UNIFORMITY IN TAXATION.

Though the tax on the traps which were of varying value was the same, the law does not violate Organic Act, § 9, providing that all taxes shall be uniform upon the same class of subjects, and shall be levied and collected under general laws, and assessments being according to the actual value, for the territorial Legislature had a power of classification of license taxes which it might exercise, and the tax was not strictly a revenue measure.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 13, 19;  Dec. Dig. ⊂⊃7(7).]

3. LICENSES ⊂⊃7(3)—UNIFORMITY—CLASSIFICATION.

It is not an abuse of power if the burden of taxation is imposed equally on all persons pursuing the same business or calling, provided, in case of classification, the basis is reasonable.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 9, 19;  Dec. Dig. ⊂⊃7(3).]

4. LICENSES ⊂⊃7(1)—WHAT ARE.

Though dummy traps, which are traps that cannot be used for fishing, were classified with others, Act Alaska April 29, 1915, cannot be held invalid on the theory that the tax on dummy traps was a tax on property and not a license tax, for the first section of the act expressly declares

that any person prosecuting, or attempting to prosecute, the business of fishing, shall pay for a license the sum of $100 per trap.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7, 19; Dec. Dig. ☞7(1).]

5. TIME ☞9(1)—COMPUTATION—DAYS—LEGISLATURE—PASSAGE OF ACTS.

Where the territorial Legislature conveyed on the 1st day of March, Act Alaska April 29, 1915, which was passed in the last hours of the session that adjourned sine die between 3 and 4 o'clock a. m., sun time, on April 30th, was not passed in violation of Organic Act, § 6, declaring that sessions of the Legislature shall not continue longer than 60 days.

[Ed. Note.—For other cases, see Time, Cent. Dig. §§ 11–16, 24½, 32; Dec. Dig. ☞9(1).]

6. LICENSES ☞7(3)—IMPOSITION—ALASKAN FISHERIES.

Act Alaska April 29, 1915, imposing as a license tax on fisheries a tax on fish traps, is not invalid as being an unjust discrimination in favor of those fisheries where the business is carried on by means of seines.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 9, 19; Dec. Dig. ☞7(3).]

7. LICENSES ☞7(8)—TAX ON APPLIANCES—ALASKAN FISHERIES.

Act Alaska April 29, 1915, imposing as a license tax on the business of fisheries a tax on fish traps, does not impose a tax on appliances used in the business, and so is not unenforceable on the theory that, the license taxes imposed by Act Cong. June 26, 1906, having been paid, the proprietor of a fishery could not be further taxed on his appliances.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 14, 19; Dec. Dig. ☞7(8).]

8. LICENSES ☞7(9)—VALIDITY—ALASKAN FISHERIES.

Act Alaska April 29, 1915, imposing a license tax on the business of fishing by taxing fish traps, is not confiscatory though in some cases it exacts a tax as high as 10 per cent.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 15, 19; Dec. Dig. ☞7(9).]

In Error to the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Action by the Territory of Alaska against the Alaska Pacific Fisheries, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Hellenthal & Hellenthal, of Juneau, Alaska, for plaintiff in error.

John H. Cobb, Chief Counsel for the Territory of Alaska, of Juneau, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. In an act of Congress "for the protection and regulation of the fisheries of Alaska," approved the 26th of June, 1906 (chapter 3547, 34 Stat. 478), it was provided, among other things, that every person or corporation carrying on the business of canning, curing, or preserving fish or manufacturing fish products within Alaska shall, "in lieu of all other license fees and taxes therefor and thereon, pay license taxes on their said business and output as follows: Canned salmon, four cents per case; pickled salmon, ten cents per barrel; salt salmon in bulk, five cents per one hundred pounds. * * *" The payment and collection of such license tax was re-

quired to be in accordance with the provisions of the Act of March 3, 1899, c. 429, 30 Stat. 1253, which was an act defining and punishing crimes in Alaska.

On August 24, 1912, Congress passed the Organic Act for Alaska providing for a territorial Legislature. In this act, which conferred legislative power upon the territory, it was provided that the Constitution of the United States and all the laws not locally inapplicable should be effective; and all laws then in force were to be continued in force until altered, amended, or repealed by Congress or by the Legislature, provided that the authority granted to the Legislature to amend, modify, and repeal laws in force in Alaska should not extend to certain laws, including the game, fish, and fur-seal laws applicable to Alaska, "or to the laws of the United States providing for taxes on business and trade," etc. It was also provided:

"That this provision shall not operate to prevent the Legislature from imposing other and additional taxes or licenses."

Section 6 of the Organic Act provided that the Legislature should convene at the capital, Juneau, on the first Monday in March, 1913, and on the first Monday in March every two years thereafter, but should not continue in session longer than 60 days in any 2 years, unless, etc. By section 9 of the act, the legislative power of the territory shall extend to "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States," etc., "provided, * * * all taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the actual value thereof."

By an act of the Legislature of the territory, approved April 29, 1915 (Laws 1915, c. 76), entitled "An act to establish a system of taxation, create revenue, and provide for collection thereof, for the territory of Alaska, and for other purposes; and to amend * * * 'An act to establish a system of taxation, create revenue, and provide for collection thereof for the territory of Alaska, and for other purposes,' approved May 1, 1913," it was provided:

"Section 1. That any person, firm or corporation prosecuting or attempting to prosecute any of the following lines of business in the territory of Alaska shall apply for and obtain a license and pay for said license for the respective lines of business as follows: * * * (8) Fish Traps: Fixed or floating, one hundred dollars per annum. So-called dummy traps included."

The plaintiff in error, defendant below, was sued by the territory for moneys alleged to be due for prosecuting and attempting to prosecute the business of fishing by means of fish traps situated in the waters of Alaska. After a demurrer had been overruled, defendant answered, setting up, in effect: (1) That the act of the Alaska Legislature just cited was void under the act of Congress creating the Alaska Legislature, and under the Constitution of the United States; (2) that the act was void because the tax attempted to be laid was not uniform upon the same class of subjects, in that it taxes fish traps and gill nets, while seines are not taxed; (3) that the act referred to is void, in that it is an attempt to levy a tax without ref-

erence to the value of the thing taxed; (4) that the tax imposed by the act cited is, in fact, a specific tax on property, and as such is levied without reference to the value of the property sought to be taxed, and is therefore contrary to the provisions of the Organic Act; (5) that the act referred to was void because the term of the Legislature had expired when the law was passed; and (6) that the defendants were not engaged in the fishing business within the meaning of the law.

The case was tried upon agreed facts substantially as follows: That the defendant owned 19 fish traps within the waters of Southern Alaska, and that they were all operated during the fishing season of 1915; that none of the fish taken in any trap operated by defendant were sold prior to being canned, but all fish so caught were used by defendant in operating its canning plants; that some of the canneries in Alaska are so situated that they are obliged to supply the fish canned by resorting to the use of fish traps, while others are situated so that the fish can be supplied in no practical manner except by the use of gill nets, and others are so situated that fish cannot be supplied except by the use of seines, and that defendant cannot practically use seines and is obliged to resort to fish traps; that defendant has complied with all the provisions of chapter 3, tit. 7, of the Compiled Laws of Alaska, relating to fish and fisheries, including the provisions of sections 259 to 275a, inclusive, and has paid the license tax provided for by said sections, but that defendant has not paid the tax sued for in this action for 1915, or any part thereof; that the session of the Legislature which passed the act which forms the basis of this action, namely chapter 76 Session Laws of Alaska 1915, convened March 1, 1915, at 12 o'clock noon; that on the 29th of April, 1915, the Legislature adjourned sine die at 12 o'clock midnight according to the official timepieces of the Legislature, that is to say, the clocks hanging in the halls of the two houses were stopped or turned back by the sergeant-at-arms just prior to the hour of 12 o'clock midnight of April 29, 1915, and thereafter, between the hours of 3 and 4 o'clock a. m., sun time, of April 30, 1915, while the clocks in the halls of the Legislature still indicated a time prior to midnight, being stopped or turned back as aforesaid, the act, chapter 76 of the Session Laws of Alaska 1915, was finally passed by both houses of the Legislature and approved by the Governor and enrolled with the Secretary for the territory as it now appears in the printed volume of the Session Laws of Alaska 1915, c. 76; that some of the traps of the defendant are worth over $10,000, while some are not worth to exceed $1,000.

The District Court ordered judgment for the territory for $1,963. Judgment was entered accordingly, and writ of error to this court was sued out.

[1] It is plain, we think, that our conclusions should be arrived at by assuming that the great object of the legislative act of April 29, 1915, quoted above, was to create revenue, and that in its scheme of license taxes the Legislature had in mind provision for the expense of administration of the territory. Congress having given to Alaska a territorial form of government and having created a legislative as-

sembly and conferred upon it legislative powers, the power in the general words used was broad enough to authorize legislation upon "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States." This was the scope of the power as by first expression conferred. But at once, by the same provision which conferred the general power, there were imposed many restrictions or limitations which must be read with the general transfer of authority, and which, when construed with it, in practical effect greatly limit the exercise of the power. The specific restrictions included, among other matters, legislation with respect to public lands, charters, divorces, lotteries, gambling, manufacture of liquor, subscriptions to stock of incorporated companies, and laws creating loans and bonded indebtedness. We have mentioned these enumerated limitations because their number and importance emphasize the thought that 'but for them the general words whereby the conferred legislative power should extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States would have comprehended power to legislate with respect to them as included within rightful subjects of legislation. We find also that, by section 3 of the Organic Act, the power was curtailed with respect to the then existing game and fish laws of the United States applicable to Alaska by express declaration that the general authority conferred was not extended to alter, amend, modify, and repeal laws in force on those subjects, or "to the laws of the United States providing for taxes on business and trade." If these restrictions stood without qualifying language, undoubtedly they would prevent legislation which would alter, amend, modify, or repeal not alone the then existing fish laws, but also the laws for taxation of business in force when the Organic Act was passed; that is, August 24, 1912. Plainly such then existing laws would have continued as the only statutes which controlled. But we cannot stop at this point, for, by the same section (3) of the act wherein we read the words which saved existing fish laws and those providing for taxes on business, Congress went on to provide explicitly that the provisions of limitation should not "operate to prevent the Legislature from imposing other and additional taxes or licenses." Now, when Congress provided against possible misunderstanding as to the operation of the statute, it in effect defined its intentions and by positive words removed limitations upon the grant of general legislative power under which other and additional taxes and licenses might thereafter be imposed, excepting, of course, such other special limitations as were incorporated within the Organic Act itself. Going, then, to the text of the act to see if we find such limitations upon the power to legislate for the future, none such appear with respect to the imposition of additional license taxes on the fishing business.

It is urged that by the legislation of Congress (act approved June 26, 1906, 34 Stat. L. 478, c. 3547) there was a reservation of exclusive control of the fish of Alaska and of the right to legislate with respect thereto. It is correct that in the act of 1906 referred to there was a provision that every person or corporation carrying on the business of canning, curing, or preserving fish products within Alaska should,

"in lieu of all other license fees and taxes therefor and thereon, pay a license tax on their said business and output as follows," and specifying taxes to be paid and collected. The effect of this declaration was to make the license fees upon the salmon canning and manufacturing business those prescribed in that act, and not those which had previously been fixed in the act of June 6, 1900 (chapter 786, 31 Stat. L. 331). This act of June 26, 1906, with detailed care made provision whereby the catch and pack of salmon made in Alaska by the owners of private salmon hatcheries in Alaska should be exempt from all license fees and taxation of every nature at the rate of 10 cases of canned salmon to every 1,000 red or king salmon fry liberated, upon certain conditions. Provisions were also made declaring it to be unlawful to maintain dams, fences, and other obstructions, except for fish culture, unless placed at certain distances from shores; imposing restrictions on the use of drift nets, seines, traps, and other appliances, except for fish culture; also, for a weekly close season. The law also authorized the Secretary of Commerce and Labor to designate spawning grounds in which fishing might be limited or prohibited. The wanton waste of fish was prohibited, the use of brands was limited, the method of catching or killing fish was regulated, and provisions made for punishment for violations of the law. But when Congress, in 1912, conferred the legislative power which we have shown exists, while it expressly withheld power to alter or amend laws pertaining to fish and other certain subjects and saved certain laws then in force, it nevertheless unmistakably transferred power to the newly created legislative body to impose other and additional taxes and licenses; that is, power to impose taxes different from, and it might be additional to, those already in force when the Organic Act was approved. And thus by the Organic Act those general provisions for the protection of the fish which we find in the act of 1906 were kept in force without possibility of alteration, amendment, or repeal by the territorial Legislature, and the specific license tax provided by the act of 1906 was kept in force, but with power transferred to the Legislature to impose, if it should see fit, other and additional license taxes.

We cannot agree that the portion of the act of 1906 which provides for license fees and taxes is inseparable from the other provisions of that act. The protection and encouragement of fisheries was evidently one of the main purposes of the act, and the creation of revenue by the imposition of a license tax on the business of canning and manufacturing was another purpose. Those portions of the act which have to do with the methods of carrying on fishing, and which prescribe the seasons when it may be carried on, and the waters within which it may be carried on, are preserved; but the imposition of additional license taxes to be imposed for carrying on the business was a subject of a different character and, in the judgment of Congress, might properly be entrusted to the wisdom of the newly created legislative assembly. The history of the passage of the Organic Act shows that somewhat peculiar conditions were presented with respect to providing for the fiscal needs of the territory. No general property tax laws obtained. Revenue would have to be raised, and naturally some

scheme of license taxation of the extensive industries carried on in the territory presented itself for adoption. The business of fishing, therefore, became a main subject for consideration by Congress in the question of future taxation. The Congressional Records disclose that after discussion it was decided not to abridge too far the transfer of power in the Legislature to adopt its own scheme of levying taxes and licenses upon the fishing business; Congress reserving to itself, by section 20 of the Organic Act, the possible exercise of the power to nullify any law passed by the territorial Legislature. Congressional Record, Sixty-Second Congress, vol. 48, pt. 6, p. 5288; Lapina v. Williams, 232 U. S. 90, 34 Sup. Ct. 196, 58 L. Ed. 515; Woodward v. De Graffenried, 238 U. S. 285, 35 Sup. Ct. 764, 59 L. Ed. 1310; Kohlsaat v. Murphy, 96 U. S. 153, 24 L. Ed. 844.

[2, 3] Does it follow that, because the license tax imposed by the territorial Legislature is a measure creating revenue, it conflicts with that portion of section 9 of the Organic Act providing that:

"All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessment shall be according to the actual value thereof."

We take it to be indisputable that the creation of revenue by the imposition of license taxes upon carrying on of business is, in a general sense, a rightful subject of legislation. But in this matter inquiry into the general question is unnecessary, for, as already pointed out, we have express transfer of authority to the territorial Legislature to impose license taxes. The power, therefore, being in the Legislature, such taxes may be imposed without the restrictive limitations which must control in levying taxes upon property in its usual sense. Many well-considered cases might be cited holding that taxes which are levied on occupations, business, or, it may be, franchises, are not brought within the principle of equality and uniformity in the sense that the Legislature must make the taxation of all occupations or pursuits equal. Cooley on Taxation (3d Ed.) c. 6. And it is well established that it is not an abuse of power if the burden of taxation is imposed equally upon all persons pursuing the same business or calling, provided, if there should be any division into classes, the basis of classification is reasonable and not merely arbitrary. Brushaber v. Union Pacific R. Co., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493; Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; Peacock & Co. et al. v. Pratt, 121 Fed. 772, 58 C. C. A. 48.

In Binns v. United States, 194 U. S. 486, 24 Sup. Ct. 816, 48 L. Ed. 1087, we find a helpful discussion of the taxing power of Congress with respect to Alaska. A statute passed by Congress required one "prosecuting" a "line of business" within Alaska to obtain a license from the District Court in Alaska and pay for the license for the "line of business" a certain prescribed fee. The statute also provided that, if one attempted to do business without having first paid the license, he should be deemed guilty of a misdemeanor. Binns was prosecuted and convicted of violation of this statute. Upon review, the argument in behalf of Binns was that the statute referred to conflicted with sec-

tion 8 of article 1 of the Constitution of the United States, which reads:

"The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

The Supreme Court, through Justice Brewer, accepted the purpose of the Alaska law fixing license fees to be the collection of revenue, and conceded that license fees are excises within the constitutional sense of the term; but, even so, the court held that they were to be regarded as local taxes imposed for the purpose of raising funds to support the administration of local government in Alaska, and that Congress had plenary power, except as controlled by the Constitution, to legislate for the territory of Alaska. The court said:

"It may legislate directly in respect to the local affairs of a territory or transfer the power of such legislation to a Legislature elected by the citizens of the territory. * * * For Alaska, Congress has established a government of a different form. It has provided no legislative body, but only executive and judicial officers. It has enacted a penal and civil code. Having created no legislative body and provided for no local legislation in respect to the matter of revenue, it has established a revenue system of its own, applicable alone to that territory. Instead of raising revenue by direct taxation upon property, it has, as it may rightfully do, provided for that revenue by means of license taxes. * * * In the exercise of this power, Congress, like any state Legislature unrestricted by constitutional provisions, may at its discretion wholly exempt certain classes of property from taxation, or may tax them at a lower rate than other property."

We think these views are applicable and controlling in the present case, because, when Congress gave to the Legislature of the territory the power to legislate upon all rightful subjects not inconsistent with the laws of the United States, it thereby exercised the right to transfer the power which it itself had, and the Legislature could use it, subject, of course, to such constitutional limitations as always surrounded the congressional power and to such further limitations as Congress might see fit to throw about the power transferred.

[4] It is argued that the Legislature of Alaska did not have reference to the business of fishing with fish traps, as "dummy traps" are classed with the others, and, as dummy traps cannot be used in fishing, it is said the Legislature intended to place a specific property tax on fish traps regardless of whether the traps were used in catching fish or not.. Pursuing this line of thought, plaintiff in error argues that the character of the tax from a tax on a fish trap as property to a tax on the business of fishing by means of fish traps merely limits the persons liable to pay a tax on fish traps to those engaged in fishing by means of such traps, and that the tax is not free from being objectionable as a specific property tax on fish traps rather than a tax on the business of fishing with the traps. If this construction of the territorial statute is the correct one, then it may be that the tax is not one on the business of fishing, but is upon the property used in such business. We are of opinion, however, that the broad rule of construction by which we are to ascertain the true intent of the Legislature does not allow this meaning to prevail. The act (Laws

of Alaska, Second Session, 1915, p. 185) by section 1 provides that any person "prosecuting or attempting to prosecute any of the following lines of business * * * shall apply for * * * a license * * * for the respective lines of business as follows: * * * Fish Traps: Fixed or floating, one hundred dollars per annum. So-called dummy traps included." The title of the act is "An act to establish a system of taxation, create revenue, and provide for collection thereof," etc. To "prosecute a designated line of business" means in ordinary acceptation to carry on the kind of business designated. Carrying on the "line of business" of fish traps in Alaska, by common or popular understanding of persons who are at all conversant with fishing in Alaska, is understood to be fishing with fish traps. Hence the words should be given their ordinary meaning as used in connection with the business of fishing in Alaska. Unwin v. Hanson, 2 Q. B. L. R. 115; Lewis' Sutherland on Statutory Construction (2d Ed.) § 389. The inclusion of "dummy traps," which are sham traps not used for fishing, within the business of fish traps, does not affect the question. It may be that, in connection with the preliminary steps of going into the business of fishing with fish traps, dummy traps are first set to hold the desired location. But whatever may be the special use to which the dummy trap is put, the inclusion of it in the business of fishing with fish traps in no way shows any intent to tax fish traps as general property rather than to tax the business of fishing with traps.

[5] We come next to the contention that the validity of the act is affected by the fact that it was passed by the Legislature after that body had been in session more than sixty days. The provision of the Organic Act (section 413, Compiled Laws of Alaska 1913) quoted in the statement we have made prohibits the Legislature from continuing in session longer than 60 days unless convened in extraordinary session by proclamation of the Governor. The Legislature which passed the act under consideration convened on the 1st of March, 1915, at 12 o'clock noon, and it is stipulated that the act was finally passed by both houses of the Legislature and approved by the Governor and was enrolled and filed in the office of the Secretary of State for the territory as now appears in the printed volume of the Session Laws of 1915, c. 76. The Legislature having convened at noon on the 1st day of March, 1915, and having adjourned sine die between 3 and 4 o'clock a. m., sun time, on April 30, 1915, was not in session longer than 60 days, for with Sundays and holidays included, in counting the 60 days, the sixtieth day did not expire until noon of April the 30th. White v. Hinton, 3 Wyo. 753, 30 Pac. 953, 17 L. R. A. 66.

[6] Plaintiff in error says that the imposition of the license tax is an unjust discrimination in favor of fisheries where the business is carried on by means of seines, in that it appears that some of the salmon fisheries operating in Alaska are so situated that the supply of fish necessary to keep the canning plant in operation can be had only by the use of fish traps, while in some other places the operation can only be continued by using seines, and that as conditions are such that the Alaska Pacific Fisheries must use fish traps to get fish for its canneries, to require it to pay a tax, but not to require the

one who uses seines to pay, is an unjust discrimination and denies the equal protection of the laws. This contention is answered by recognition of the fact that the power of Congress is ample in the premises, and as it had the power to provide that all persons catching fish by means of fish traps should pay a certain license tax, and all persons catching fish by seines should pay a different tax, the power transferred is not to be held invalid.

[7, 8] It is said that the plaintiff in error, being engaged in the salmon business and having paid a tax on its output as required by the act of Congress of June 26, 1906, should not now be required to pay a tax on the appliances used by it in connection with such business. The error of this argument rests in the assumption that the tax is a specific property tax, and therefore assessment of it must conform to the uniformity clause of the Organic Act. We cannot agree that a license tax is to be held void for failure to comply with the requirement of uniformity upon the same class of subjects by basing the tax upon an assessment according to value. Nor do we think that the tax violates the provisions of the Constitution of the United States by any discrimination against salmon canneries or fisheries which use traps in favor of those using seines, or that it is to be held by the courts to be confiscatory in that it exacts in some cases a tax as high as ten per cent.

Without further expression of our views upon the points presented, we may add that we have given very close attention to the arguments and briefs of counsel addressed to the important questions involved.

The conclusion we have reached, that there has been no excess of power exerted by the Legislature in the premises, accords, we believe, with the true intent of Congress, which, in giving to the territory legislative power broad enough in its general scope to extend to all rightful subjects of legislation within certain limitations, gave authority to enact laws imposing the license taxes involved as additional to those theretofore imposed by Congress.

The judgment is affirmed.