**TERRITORY OF ALASKA, Plaintiff,**

v.

**JOURNAL PRINTING COMPANY, a**
corporation, Defendant.

No. 7225-A.

District Court, Alaska
First Division, Juneau.

Nov. 4, 1955.

Edward A. Merdes and Henry J. Camarot, Asst. Attys. Gen., for plaintiff.

Mildred R. Hermann, Juneau, Alaska, for defendant.

HODGE, District Judge.

Plaintiff in this action seeks to recover of the defendant corporation business license taxes imposed upon the defendant under the provisions of Chap. 43, S.L.A. 1949, for the tax years 1950, 1951, 1952 and 1953 and to foreclose its claim of lien upon defendant's property for the amount of the judgment prayed for. The defendant is engaged in the business both of a printer or operator of a job printing shop, in the City of Ketchikan, and in publishing a newspaper in such city,

known as the Ketchikan Chronicle. It is admitted that the defendant has failed to pay the tax imposed by the Tax Commissioner upon the business of publishing a newspaper but has paid that portion of the tax based upon its business of a job printer. The Act in question, known as the " 'Alaska Business License Act' " establishes a general business license system in Alaska and provides for an initial annual license fee of $25, plus a sum equal to ½ of 1% of the gross receipts of such business in excess of $20,000 during the income year for which the license is to be issued; and provides for the issuance of licenses and collection of the tax by the Tax Commissioner.

Defendant, by way of affirmative defense, alleges in substance (1) that the order including newspapers under the categories of businesses required to be licensed was an administrative directive of the Tax Commissioner, and not authorized under the Act; (2) that such "order" or "directive," or the assessment of such license tax on newspapers, is contrary to the intent of the Legislature; (3) that such is in violation of the First Amendment to the Constitution of the United States, in that it restricts and abridges the freedom of the press; and (4) that the assessment of such tax is arbitrary and confiscatory, and will result in depriving the defendant of a valuable property right without due process of law, contrary to the Fourteenth Amendment to the Constitution. Thereafter plaintiff moved for summary judgment under the provisions of Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A., upon the grounds that there exists no genuine issue as to any material fact.

For a better understanding of the issues here involved, a brief history of legislation relating to business license taxes of this character in Alaska appears necessary. In 1899 Congress first established a system of federal license taxes upon specified lines of business in Alaska, which taxes were provided to be paid to the Clerks of the District Courts and covered into the Treasury of the United States, except that those taxes collected within incorporated municipalities were by regulation of the Treasury Department remitted to such municipalities. Act of March 3, 1899, 30 Stat. 1336, as amended Act of June 6, 1900, 31 Stat. 330, Sec. 35–1–1, A.C.L.A. After the passage of the Organic Act of Alaska, which retained such taxes, the Territorial Legislature passed an Act likewise imposing a license tax on certain other specified lines of business which were paid into the Territorial treasury. Ch. 31, S.L.A.1921, as amended, Sec. 35–1–11, A.C.L.A. In 1949 the Legislature established an entirely new business license system in Alaska, repealing the previous business licenses referred to, Ch. 43, S.L.A.1949, which now remains in force and which taxes likewise are covered into the Territorial treasury except for a portion thereof which is refunded to incorporated cities, independent school districts, and public utility districts.

■ Taking up the defendant's first contention, we find nothing in the Act or in the Rules and Regulations promulgated thereunder by the Tax Commissioner to indicate any such "directive," but it in fact appears that the defendant referred only to letters from the Commissioner insisting upon payment of the tax. The Act covers all businesses generally except those specifically excluded or exempted. The Regulations referred to contain certain interpretations or instructions with reference to the businesses excluded, which are covered by other types of license, and the determination of gross receipts, but make no mention of newspapers, and reference is made to the Act covering types of business not included in the instructions.

Defendant relies in this connection upon the decision of the Supreme Court of the United States in the case of Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898, affirmed in the case of Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 68, holding that Congress had no intention of including the busi-

ness of professional baseball within the scope of the Federal antitrust laws; and argues that a business not included in the purview of the legislative enactment cannot be included by any action of any court. We find this decision to be wholly inapplicable to the case at bar, and that the inclusion of newspapers, along with other businesses, is within the purview of the Act in question.

■■ It is contended that the inclusion of newspapers as a business to be taxed was not the intent of the Legislature for the reason that in all previous legislation imposing license taxes newspapers were not named and were intended to be exempt from the Act, and that the Legislature intended to carry out the same exemption else it would have named the newspaper business. But no other business is specifically named. Sec. 2 of the Act defines the term "business" as follows:

"'Business' shall include any activities or acts, personal, professional or corporate, engaged in or caused to be engaged in, or following or engaging in any trade, profession or business, including receipts from advertising services, rental of personal or real property or portions thereof, construction, processing or manufacturing, but excluding businesses specified in Section 14 of this Act, calling or vocation, with the object of financial or pecuniary gain, profit or benefit, either direct or indirect * * *."

Sec. 14 excludes certain businesses upon which other license taxes are imposed. Sec. 3 contains specific exemptions as to gross receipts from educational, religious, benevolent or charitable activities, hospitals, municipally-owned utilities, non-profit cooperatives, and home handicrafts. It is a fundamental principle of statutory construction that the enumeration of certain things in the statute implies the exclusion of all other things.

Nor can we find any merit in the contention that the intention of the Legislature may be determined by the fact that previous legislation did not tax news-

papers. In fact, the contrary appears, for it is apparent that the Legislature intended to discard' license taxes on specifically enumerated businesses and to tax all businesses proportionately.

Turning, then, to the more important point of whether or not the tax is unconstitutional as violative of the First and Fourteenth Amendments to the Constitution of the United States, defendant relies principally upon the case of Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, cited in a dissenting opinion of Mr. Justice Douglas, concurred in by Mr. Justice Black, in the case of Corona Daily Independent v. City of Corona, 346 U.S. 833, 74 S.Ct. 2, 3, 98 L.Ed. 356, in which the Supreme Court refused certiorari upon an appeal from the District Court of Appeal of California, in which the Court stated in part:

" * * * 'A state may not impose a charge for the enjoyment of a right granted by the federal constitution. Thus, it may not exact a license tax for the privilege of carrying on interstate commerce (McGoldrick v. Berwind-White Co., 309 U.S. 33, 56–58, 60 S.Ct. 388, 397, 398, 84 L.Ed. 565), although it may tax the property used in, or the income derived from, that commerce, so long as those taxes are not discriminatory. * * * A license tax applied to activities guaranteed by the First Amendment would have the same destructive effect. * * * The power to impose a license tax on the exercise of these freedoms is indeed as potent as the power of censorship which this Court has repeatedly struck down.' * * * "

The tax involved in this case was a license tax imposed by municipal ordinance upon all persons canvassing for or soliciting orders within the municipality. The Court found that such ordinance as construed and applied to an organization distributing religious literature requires them to pay a license tax as a condition to the pursuit of such activity and that such form of tax "restrains in advance"

constitutional liberties of freedom of press and religion and is therefore invalid. The ordinance was not a revenue measure in any sense. Such decision is inapplicable here.

The attention of the Court is also directed to the case of Grosjean v. American Press Co., Inc., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660, in which it is held that a state license tax imposed on owners of newspapers for the privilege of selling or charging for advertising therein, measured by a percentage of gross receipts from such advertisements but applicable only to newspapers enjoying a circulation of more than 20,000 copies, was held unconstitutional as abridging the freedom of the press. But the opinion of the Court in such case expressly states, 297 U.S. at page 250, 56 S.Ct. at page 449:

"It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government. But this is not an ordinary form of tax, but one single in kind, with a long history of hostile misuse against the freedom of the press. * * *

" * * * The tax here involved is bad not because it takes money from the pockets of the appellees. If that were all, a wholly different question would be presented. It is bad because, in the light of its history and of its present setting, it is seen to be a deliberate and calculated device in the guise of a tax to limit the circulation of information to which the public is entitled in virtue of the constitutional guaranties. * * * *"

In fact there is ample authority to the effect that newspapers and the business of newspaper publishing are not made exempt from the ordinary forms of taxation for the support of local government by the provisions of the First and Fourteenth Amendments to the Constitution, City of Corona v. Corona Daily Independent, 115 Cal.App.2d 382, 252 P. 2d 56, certiorari denied 346 U.S. 833, 74 S.Ct. 2, 98 L.Ed. 356; Tampa Times Co. v. City of Tampa, Fla., 29 So.2d 368, certiorari denied 332 U.S. 749, 68 S.Ct. 69, 92 L.Ed. 336; City of Norfolk v. Norfolk Landmark Publishing Co., 95 Va. 564, 28 S.E. 959; Giragi v. Moore, 49 Ariz. 74, 64 P.2d 819, 110 A.L.R. 314, 320; Associated Press v. National Labor Relations Board, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953.

This principle has been extended to license taxes on businesses generally, as well as property taxes. In the City of Corona case the Court in upholding a general business license tax as not abridging the freedom of the press as applied to newspaper publishing, states as follows, 252 P.2d at page 61:

"While the ordinary business tax here in issue is levied in form upon the privilege of engaging in or transacting business, it is, on its face and in fact, a tax for revenue purposes only, and does not grant or take away any right to do business, does not subject business to withdrawal or control by the city, is not regulatory in any manner, and in substance has been recognized and upheld by the weight of authority."

In the Giragi v. Moore case the Supreme Court of Arizona reviews this question in considerable detail and holds that a state law imposing a "privilege" tax of 1% on sales or gross income of businesses of all kinds was not unconstitutional as a deprivation of due process under the Fourteenth Amendment, as newspapers have no specific immunity and constitute no privileged class. The Court further states, 64 P.2d at page 822:

" * * * The rule contended for would certainly place the publishers of newspapers in a favored class. It would permit the taxing of all other businesses upon their sales or gross income and exempt newspapers and other publications. The Supreme Court would have to say in the plainest and most unequivocal language that the burden of taxation should not be borne by the press and all others taxed before we would believe that court intended such a

rule. Certainly it has not so stated in the Grosjean Case.

"It is obvious the tax will reduce to its extent the net income of all persons required to pay it, including newspaper publishers. Every business taxed faces the same problem. If security of life and property were possible without expense, taxes could be forgotten, but, since that is not possible, all who share the protection given by the government should also share the expense of that protection in proportion to their ability, regardless of the business they are engaged in, if it is for profit. The mere fact that a tax reduces a person's net income is no legal restraint on him or his business. * * *"

Similarly, in the Associated Press case, in which it is held that the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., when applied to the Associated Press does not abridge the freedom of the press, the Court states, 301 U.S. at pages 132 and 133, 57 S.Ct. at page 656:

"The business of the Associated Press is not immune from regulation because it is an agency of the press. The publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others. * * * Like others he must pay equitable and nondiscriminatory taxes on his business."

It is true that Sec. 4 of the Act requires a license for the "privilege" of engaging in a business in the Territory. But this language does not render it invalid nor destroy the legislative intent that the purpose of the tax is to raise revenue, and not to regulate any business. City of Corona v. Corona Daily Independent, supra; Giragi v. Moore, supra. The tax in question is clearly a revenue measure, as has been held relating to the previous two license taxes mentioned above. Binns v. United States, 194 U.S. 486, 24 S.Ct. 816, 48 L.Ed. 1087; Alaska Pacific Fisheries v. Territory of Alaska, 9 Cir., 236 F. 52.

Finding that there is nothing in the Act or the means of enforcement thereof which violates any constitutional privilege and that there remains in fact no genuine issue as to any material fact in this case, plaintiff's motion for summary judgment will be granted. Judgment may be presented in accordance with this opinion for the relief demanded in the prayer of plaintiff's complaint.