## SHAW v. CARTER, State Auditor.

No. 22184. Opinion Filed March 26, 1931.

James I. Phelps, for plaintiff in error.

J. Berry King, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendant in error.

McNEILL, J. This cause comes to this court on appeal from the judgment of the

district court of Oklahoma county. The parties will be referred to as they appeared in the trial court, wherein the plaintiff in error, A. S. J. Shaw, was plaintiff, and the defendant in error, Frank C. Carter, State Auditor, was defendant.

The plaintiff, as a taxpayer, filed his petition in the district court of said county on March 14, 1931, seeking to permanently enjoin the defendant, as State Auditor, from paying any member of the Thirteenth Legislature in excess of $2 per day for his services, contending in his petition that it was the duty of said defendant, as State Auditor, to audit and pay the salary claims of the members of the Thirteenth Legislature; that by the terms of section 21, article 5, of the state Constitution, the members of said Legislature were entitled to receive only 60 days' pay at the rate of $6 per day, and thereafter to receive pay at the rate of $2 per day. Said plaintiff alleges in his petition, in substance, that the Thirteenth Legislature of the state convened on the 6th day of January, 1931, and has remained in session and is still in session as such Legislature up to and including the date of the filing of his petition, and has been in session for more than 60 days; that the members of said Legislature have received as their per diem, under and by virtue of section 21, article 5, of the said Constitution, the sum of more than $360, or more than $6 per day, as provided by aforesaid section of the Constitution; that said members have filed their pay roll or claims for an additional ten days' pay at the rate of $6 per day, and that said defendant, as State Auditor, has prepared warrants for such payment, and is about to pay said members of such Legislature said $6 per day; that said payments, if made, are illegal, unlawful, unauthorized, and in violation of the plain provisions of the Constitution of the state of Oklahoma; that there are 141 members of the Legislature, and that the total payments about to be made to them on the basis aforesaid amount to $8,460, which is $5,640 more than said Legislatures are entitled to receive under said provisions of the Constitution; that said defendant intends, if not prevented from doing so by order of the court, to pay the members of said Legislature an additional ten days' pay at the same rate, which payment would amount to another $5,640, not authorized by the Constitution, or a total of $11,280, which the plaintiff, in common with other taxpayers, will be required to pay. The prayer of plaintiff's petition is as follows:

"Wherefore, plaintiff prays that the defendant be perpetually enjoined and restrained from paying to said members of the said Oklahoma Legislature any and all amounts over and above $360 as the per diem of each member for the first 60 days of such Legislature, and $2 per diem after the expiration of such 60 days, and that pending final hearing upon this application for injunction, this court issue a temporary restraining order preventing such payments, plaintiff emphasizing the fact, however, that he is not objecting to the amount of $2 per diem being paid regularly to said members of said Legislature after the expiration of said 60 days session."

After the issuance of a temporary restraining order, the defendant, on March 17th, filed his answer, which is, in part, as follows:

"Third. Defendant denies that 60 days of the session of the Thirteenth Legislature had elapsed, within the meaning of section 21 of article 5, supra, on or prior to March 14, 1931, the date plaintiff's petition was filed and the temporary restraining order in this case issued, and alleges that only 51 days of said session had so elapsed at said time.

"Fourth. Defendant admits that he, as State Auditor, intends to continue to pay and will pay to the members of the Legislature compensation at the rate of $6 for each calendar day from the date the Legislature convened on January 6, 1931, until 60 days of actual session of the Legislature shall have elapsed, to wit, until after 60 days have elapsed on which either one or both of the two branches of the Legislature of Oklahoma have been in actual session, and that thereafter he will only pay said members of the Legislature compensation at the rate of $2 per day.

"Fifth. Defendant alleges that the position he has assumed in the premises and in this case, to wit: that the members of the Legislature are entitled to be paid $6 per day for each calender day from the day the Legislature convened until after 60 days of actual session of one or more of the two Houses of the Legislature shall have elapsed, usually referred to as legislative days, is in accord with the legislative interpretation of section 21 of article 5 of the Constitution, as is revealed by chapter 281, Oklahoma Session Laws 1923, chapter 264, Oklahoma Session Laws 1925, and chapter 251, Oklahoma Session Laws 1927, and is also in accord with written opinions of the Attorney General, one dated March 26, 1923, addressed to the Honorable Clark Nichols, member of the state Senate, and another opinion dated February 28, 1927, addressed to the Governor of the state of Oklahoma, and that it is also in accord with the administrative interpretation placed on said section of the Constitution and said acts of

the Legislature by the officers of the House and the Senate and by the State Auditor for at least the last five regular sessions of the Legislature."

This matter came on for trial on the 18th of March, 1931, at which time the following stipulation of facts was entered into:

"1. That the Thirteenth Legislature of the state of Oklahoma convened on January 6, 1931, and that the members thereof, both of the House and the Senate, have been paid $6 per day for each day since the Legislature convened, for 60 consecutive calendar days, or a total sum of $360 each, which pay covered a period beginning January 6, 1931, and ending on March 6, 1931, inclusive.

"2. That one or both houses of said Legislature have been in actual session, that is, actually transacting legislative business, up to and including March 14, 1931, the date on which this action was brought, or 51 days, which days are referred to in the calendar and journal of said houses as 'legislative days.'

"3. That the defendant, as State Auditor, intends to pay and will pay, unless restrained or enjoined by the court, each member of said Legislature $6 per day for each calendar day from and after the 14th day of March, 1931, until nine days have elapsed from said date, on which one or both of said houses of the Legislature will be in actual session as aforesaid, but that after said nine such days have elapsed, he will not pay members of the Legislature more than $2 a day for each calendar day thereafter until the Legislature adjourns.

"4. That the Ninth Legislature of the state of Oklahoma passed chapter 281, Oklahoma Session Laws 1923; the Tenth Legislature passed chapter 264, Oklahoma Session Laws 1925, and the Eleventh Legislature of the state of Oklahoma passed chapter 251, Oklahoma Session Laws 1927, relating to their construction of the meaning of section 21, article 5 of the state Constitution.

"That the members of the last five regular sessions of the Legislature of the state of Oklahoma, or at least the great majority thereof, have been paid at the rate of $6 per day for more than 60 calendar days from the date of the convening of each of said Legislatures, to wit: The Eighth Legislature, $6 per day for 70 days; the Ninth Legislature, $6 per day for seventy-five days; the Tenth Legislature, $6 per day for seventy-three days; the Eleventh Legislature, $6 per day for 70 days, and the Twelfth Legislature, $6 per day for 71 days."

In addition to the foregoing stipulation of facts, the defendant introduced three written opinions by the Attorney General of this state dated March 26, 1923; February 28, 1927, and March 11, 1931, respectively, for the purpose of showing the administrative interpretation that had been placed on section 21, article 5, of the state Constitution, by the office of the Attorney General. The district court rendered judgment on March 19, 1931, sustaining the position of the defendant and denying the injunction. A motion for new trial was duly filed, same overruled, and the cause is before this court to reverse the judgment of the trial court.

Counsel for plaintiff, in their brief, call attention of the court to the fact that they have not been able to find a single case involving the exact question herein presented and that cases cited by them are authorities only by reasoning and analogy.

There is no dispute as to the question of facts involved in this case. The plaintiff contends that by the terms of said section 21, article 5, of the state Constitution, the members of the Legislature are entitled to receive only 60 days' pay at the rate of $6 per diem for their services, and thereafter to receive pay at the rate of $2 per diem, and that regardless of how many days the Legislature is in session or how many holidays intervene, when the members of said Legislature shall have received the sum of $360, then automatically their salary is reduced to $2 per diem, and that it is immaterial whether or not they receive pay for Sundays, holidays, and days of intermediate adjournment.

On the other hand, it is contended by the defendant that the members of the present Legislature are entitled to be paid for their services at the rate of $6 per diem for each calendar day from the day the Legislature convened January 6, 1931, until 60 legislative or working days of the session of the Legislature shall have elapsed, to wit, after 60 such legislative or working days shall have elapsed, then the compensation to the members of the Legislature drops from $6 to $2 per diem. This makes the issue.

It was admitted at the time said action was filed in the district court that only 51 legislative or working days of the present session of the Legislature had elapsed. From an examination of the pleadings and the stipulation of facts entered into by and between the parties herein, no contention is raised that the members of the Legislature are not entitled to $6 a day for Sundays, legal holidays, or for days during which the Legislature was not actually in session.

Section 21, article 5, of the state Constitution, provides:

"Members of the Legislature shall receive

$6 per diem for their services during the session of the Legislature, and ten cents per mile for every mile of necessary travel in going to and returning from the place of meeting of the Legislature, on the most usual route, and shall receive no other compensation: Provided, that members of the Legislature, except during the first session thereof held under this Constitution, shall receive only $2 per diem for their services after 60 days of such session have elapsed."

The portion of the same pertinent to the issues in this case being as follows:

"Provided, that members of the Legislature * * * shall receive only $2 per diem for their services after 60 days of such session have elapsed."

Does this provision of the Constitution attempt to limit the payment of $6 per diem until a member of the Legislature has received the sum of $360? The unit of time provided for the payment of $6 per diem for the services of members of the Legislature is for a period, to wit, "during the session of the Legislature," limited, however, in the proviso aforesaid to $2 per diem "* * * after 60 days of such session have elapsed."

In this section, or no other section of the Constitution, is any attempt made to limit the length of the session of the Legislature. The unit or length of time of the session is indeterminable. It is left to the option of this body of government to determine how long it shall remain in session. Many of the states have seen fit to embody in their Constitutions the length of time their respective Legislatures shall remain in session, but our Constitution contains no such provision. Rearranging the language of the aforesaid provision to read, "after 60 days of such session have elapsed," "the members of the Legislature, * * * shall receive only $2 per diem for their services," it presents a plain and clear mandate. In order to arrive at the intent of the aforesaid provisions of the Constitution it will be necessary to further examine this language and the meaning of the words used therein, and particularly the words, "per diem for their services during the session of the Legislature," used in the first portion of the section; and the words in the proviso, "per diem for their services after 60 days of such session have elapsed."

The phrase "session" has a fixed and definite meaning which has heretofore received a construction by our court.

In the case of Ralls v. Wyand, 40 Okla. 323, 136 Pac. 158, the 6th paragraph of the syllabus provides:

"The meaning of the word 'session' is the sitting of a body, competent for the transaction of its business; the time during which it is convened and actually engaged in business; the time during which a legislative body or other assembly sits for the transaction of business."

In the body of the opinion, the court states:

"The Ency. of Plead. & Prac. vol. 21, pp. 559, 560, says: 'A session of court is the time during a term in which the court sits for the transaction of business.'

"The Century Dictionary includes the following among the word's (session) meaning: 'The sitting together of a body of individuals for the transaction of business; the sitting of a court, academic body, council, Legislature, etc., or the actual assembly of the members of these, or any similar body, for the transaction of business; as, the court is now in session (that is, the members are assembled for business); the time, space or term during which a court, council, Legislature, or the like, meets daily for business, or transacts business regularly, without breaking up. * * *'

"The word 'session,' as used in the Constitution of Minnesota, art. 4, sec. 11, providing that 'within three days after the adjournment of the Legislature, the Governor may approve, sign and file in the office of the Secretary of State any act passed during the last three days of the session,' means the actual assemblage of the Legislature for business. Farwell Co. v. Matheis (C. C.) 48 Fed. 363, 364. It is held in that case, in speaking of the word 'session,' that: 'The prime definition of this word, when applied to a legislative body, is the actual sitting of the members of such body for the transaction of business.' "

Webster's New International Dictionary defines the word "session" as follows:

"(L. sessio) The actual or constructive sitting of a court, council, Legislature, etc., or the actual or constructive assembly of the members of such a body, for the transaction of business, thus, a body is said to be in session when the members are in fact assembled and (constructively) during the time between adjourned meetings, during which time the body is for some purposes considered as legally in session.

"The time, period, or term during which a court, council, Legislature, etc., meets regularly for business; or the space of time between the first meeting and the prorogation or final adjournment. The session of a court usually coincides with or includes the term, and is often called a term."

Century Dictionary:

"Thus, a session of the Legislature commonly means the period from its assembling

to its adjournment for the year, or session, in contradistinction to its daily sessions during that period. So a session of Parliament comprises the time from its meeting to its prorogation, of which there is in general but one in each year. Technically at common law it was held that a meeting of Parliament could not be called a session unless the sovereign passed an act. The session of a judicial court is called a term, also applied in the United States to the daily or half-daily periods of work of a school."

Encyclopedia Britannica:

"Session—The act of sitting or the state of being seated, more generally the sitting together or assembly of a body judicial, legislative, etc., for the transaction of its business, and also the time during which the body sits until its adjournment or dispersion. A session of Parliament is reckoned from its assembling till prorogation."

Bouvier's Law Dictionary (3rd Ed.) vol. 3, p. 3052:

"The time during which a legislative body, a court, or other assembly, sits for the transaction of business; as a session of Congress, which commences on the day appointed by the Constitution, and ends when Congress finally adjourns before the commencement of the next session; the session of the court, which commences at the day appointed by law and ends when the court finally rises."

Rapalje, Law Dict.:

"Sessio—a sitting or session. * * * Session, the sitting of a court or of justices in court also the time during which a legislative body sits for the transaction of business."

Anderson's Dictionary of Law:

"Session. A sitting; an actual sitting, a term of a court or of a legislative body."

The Constitution of the state of Alabama provides: The Legislature shall not remain in session longer than 60 days.

The Supreme Court of that state was called upon to construe this provision in reference to the validity of an act which was passed after 50 consecutive calendar days had expired since the Legislature had convened, but before 50 legislative days had elapsed, in the case of Moog v. Randolph, 77 Ala. 597, and states, as follows:

"I am satisfied that 50 days means 50 legislative working days, exclusive of the Sundays and other days upon which the Senate and House concur in refusing to sit by joint resolutions of adjournment. * * * This suggestion is not intended to cast any doubt upon previous decisions of this court, holding that the members of the General Assembly are entitled to draw their per diem pay on Sundays—a view in which we all fully concur."

Also, the Supreme Court of that state in the later case of Ex parte Cowert, 92 Ala. 94, 9 So. 225, in the second paragraph of the syllabus states:

"The word 'days,' in Const. Ala. art. 4, sec. 5, providing that the Legislature shall not remain in session longer than 50 days, does not include Sundays."

And in the opinion states:

"The ordinance is further attacked on the ground that the statute, intended to authorize. and relied on as authorizing, its adoption is itself unconstitutional and void for the reasons—First, that it was enacted after the lapse of 50 days to which sessions of the general assembly are limited. * * *

"We will consider these positions seriatim in the order stated:

"1. It has more than once been determined by this court, and we have no disposition to depart from our rulings on that subject, that 'days,' within the limitation upon the sessions of the General Assembly imposed by section 5, art. 4, of the Constitution, mean **working** days, and of consequence that Sundays are to be excluded from the computation by which the end of the session is to be determined. Under this rule the act in question was passed within the constitutional limits of the Session of 1890-91: Moog v. Randolph, 77 Ala. 597; Sayre v. Pollard, Id. 608."

The Supreme Court of Wyoming in the case of White v. Hinton, reported in 30 Pac. 953, held:

"* * * A calendar day, even, is not necessarily a legislative day. A fortiori a fraction of a calendar day is not necessarily, or even presumptively, a legislative day. By a long established practice of Congress, a calendar day is not recognized as limiting a session of any legislative day. * * * Whether the limitation of 40 days means 40 consecutive days, or 40 days of actual legislative session, excluding Sundays and other days when the Legislature does not sit, is a question upon which there seems to be some conflict of judicial opinion. Some of the best-considered cases hold that the limitation allows 40 full days for actual legislative work. * * *"

The state of Michigan has approved the language used in the case of Moog v. Randolph, supra, reported in the case of Smith v. Auditor General, 165 Mich. 140, 130 N. W. 557, which case involved the right of the assistant secretary of the Michigan Senate to draw per diem for a Saturday and Sunday on or during which neither House of the Legislature of that state was in session. The syllabus in that case is as follows:

"Under Const. 1850, article 4, section 15, as amended in 1860, fixing the compensation

of the members of the Legislature at a per diem for actual attendance, and Laws 1873, No. 3, section 3, fixing the compensation of the members of the Legislature as prescribed by the Constitution, and providing that the secretary of the Senate and the first assistant secretary shall receive a per diem compensation which shall be in full for all services during any regular session, the assistant secretary of the Senate is entitled to the per diem during ordinary adjournments, including Sundays."

In the opinion the court stated in part as follows:

"The usual temporary adjournments of the Legislature, which are, in fact, necessary to enable the members to perform their duties as members of special and standing committees, in making investigations for the purpose of acquiring necessary information and drawing reports, bills, and amendments for the action of the house when in session, and in performing the manifold duties incident to their position and necessary to the proper discharge of their duties have, in our opinion, no effect upon the continuity of the session.

"It is to be observed that neither the right of the members of the Legislature nor of the officers and employees is grounded upon the right to receive compensation for services actually rendered upon Sundays, but upon the view that the method of computing the time in determining their compensation as fixed by the Constitution and laws concerning the same recognizes all days of the session, whether work is done thereon or not, in which the Legislature may legally be said to be in session as proper days to be included in the computation. We have no doubt, however, that an adjournment of the Legislature and the dispersal of its members to attend to their own affairs to the exclusion of those of the state may cover such a period of time as to exclude the view that the Legislature is in session, for the purpose of basing compensation upon services rendered.

"The fact, also, that the members of the Legislature have always claimed the right to, and have received, compensation for Sundays during the sessions, while insufficient to overturn the plain meaning of a statute, is of considerable moment in ascertaining the intention of the Legislature in passing statutes providing for their compensation. * * *

"So far as we have been able in the brief time at our disposal to examine authorities, they appear to support our conclusion that Sundays are to be included in the computation of the salaries, and that the Sunday law, sec. 5912 of the Compiled Laws, has no application to the question. Cushing's Law & Practice of Legislative Assemblies, sections 356, 357; Ex parte Pickett, 24 Ala. 91; State v. Hastings, 16 Wis. 337; Moren

v. Blue, 47 Ala. 709; Moog v. Randolph, 77 Ala. 597, vide, page 607; State v. State Auditor, 37 Mo. 176.

"It is argued by the Attorney General that Moog v. Randolph, supra, and Ex parte Cowert, 92 Ala. 94, (9 South. 225), holding that a constitutional provision, which limited each session of the General Assembly to 50 days, means working days and Sundays are excluded from the computation, overrule the previous cases in that state above cited. In Moog v. Randolph, the court said:

" 'The right to adjourn ad libitum, upon certain week days, and the right to draw pay for such days, are questions not necessarily dependent, the one on the other. The power to adjourn may exist, without the right to draw pay, and they are not convertible or correlative powers, as has been argued before us at the bar. This suggestion is not intended to cast any doubt upon previous decisions of this court, holding that the members of the General Assembly are entitled to draw their per diem pay on Sundays—a view in which we all fully concur.'

"We are therefore of the opinion that the relator is entitled to the writ as prayed, and it is so ordered."

In interpreting the expression "days" of a session, we quote from the case of Farwell Co. v. Matheis, 48 Fed. 363, as follows:

"Const. Minn. art. 4, sec. 11, providing that within three days after the adjournment of the Legislature the Governor may approve, sign, and file in the office of the Secretary of State 'any act passed during the last three days of the session, and the same shall become law,' means the last three days of sitting for business, and does not include Sunday; and hence a bill passed on Saturday was within the provision, though the adjournment did not occur until the following Tuesday."

In the body of the opinion appears the following language:

"* * * The last clause of section 11, art. 4, of the Constitution of the state of Minnesota, declares that 'the Governor may approve, sign, and file in the office of the Secretary of State, within three days after the adjournment of the Legislature, any act passed during the last three days of the session, and the same shall become a law.' This act did become a law unless Sunday is counted as one of the three days of the session, within the meaning of this provision of section 11, art. 4.

"The correct construction of this clause depends upon the definition of the word 'session,' as therein used. The prime definition of this word, when applied to a legislative body, is the actual sitting of the members of such body for the transaction of business. * * * The 'last three days of

the session,' in section 11, means working days, when the Legislature is in actual session for the transaction of business.. The journals of the two houses show this. It appears from them that Saturday, April 20, 1889, when chapter 30 passed the Senate, was the seventy-eighth day of the session, and that the Legislature adjourned on Tuesday, April 23, 1889, the eightieth day of the session, Sunday not being a day of the session. In my opinion, chapter 30 was duly passed and approved by the Governor in time, and became a law. It is unnecessary to consider the other questions presented. The garnishee is discharged, and it is so ordered."

Said defendant for answer denies the material allegations set forth in plaintiff's petition, admitting that the Thirteenth Legislature convened on January 6, 1931, and specifically denies that 60 days of said session have elapsed within the meaning of section 21 of article 5 of the Constitution of Oklahoma, and alleges that 60 days of said session will not have elapsed within the meaning of said section until either one or both of the two houses of the Legislature of Oklahoma shall have been in actual session on or during the 60 days, and denies that 60 days of the session of the Thirteenth Legislature have elapsed within the meaning of section 21 of article 5 on or prior to March 14, 1931, and alleges that:

"Defendant alleges that the position he has assumed in the premises and in this case, to wit, that the members of the Legislature are entitled to be paid $6 per day for each calendar day from the day the Legislature convened until after 60 days of actual session of one or more of the two Houses of the Legislature shall have elapsed, usually referred to as legislative days, is in accord with the legislative interpretation of section 21 of article 5 of the Constitution, as is revealed by chapter 281, Oklahoma Session Laws 1923, chapter 264, Oklahoma Session Laws 1925, and chapter 251, Oklahoma Session Laws 1927, and is also in accord with written opinions of the Attorney General, one dated March 26, 1923, addressed to the Honorable Clark Nichols, member of the State Senate, and another opinion dated February 28, 1927, addressed to the Governor of the state of Oklahoma, and that it is also in accord with the administrative interpretation placed on said section of the Constitution and said acts of the Legislature by the officers of the House and the Senate and by the State Auditor for at least the last five regular sessions of the Legislature."

It must be borne in mind that in the performance of legislative functions it is often advisable for the Legislature to make temporary adjournments to enable its members to perform effectively their actual duties while serving on committees preparing reports, drafting bills and amendments, seeking information for legislative enactments, and that such adjournments have no effect upon the continuity of the session of the Legislature.

In interpreting the first clause of the aforesaid constitutional provision it is to be observed that this whole section must be considered as a whole and the clauses thereof construed in the light of the provisions therein, and that the words used therein must be given a fair and reasonable construction. The expression "during the session of the Legislature" means an entirety, during all of the time that there is a sitting together of the legislative body for the transaction of business; the time during which the Legislature transacts its business; the space of time between the first meeting and final adjournment, or the period from its assembling to its adjournment. When this first clause of aforesaid section of the Constitution is read in this light, its meaning becomes apparent. In other words, "members of the Legislature shall receive $6 per diem for their services during the session of the Legislature," to wit, the time during which it is continuously and actually engaged in business, during which it sits for the transaction of business, during the time between its first meeting and its final adjournment, limited, however, by the proviso, to wit: "Provided that members of the Legislature shall receive only $2 per diem for their services after 60 days of such session have elapsed."

It is then made plain and clear that the $6 per diem is not to be based on the "days of such session," but "during the session of the Legislature," limited to the proviso, and that the time when the $2 per diem is to commence is not founded or predicated on the session as an entirety, but upon the elapsing of "60 days of such session." As observed, a day of such session is to be construed as a day during which the Legislature was convened, actually engaged in business, sitting for the transaction of business. Such is the meaning of a "day of such session," and "after 60 days of such session have elapsed," that is, have passed away, then the members thereof shall receive only $2 per diem for their services. We conclude that "after 60 days of such session have elapsed," that is, 60 legislative working days wherein there was an actual assemblage of the Legislature for business, and wherein there was an actual sitting of the members of such body for the transaction of business, then the payment of $2 per diem commences. This appears the plain, obvious meaning of this section. Had the framers of our Constitution

64

provided by said section, as follows: "Members of the Legislature shall receive six ($6.00) dollars per diem for their services until they have been paid three hundred sixty ($360.00) and thereafter they shall receive two ($2.00) per diem for their services," the grounds for contention of plaintiff would be tenable, but the Constitution does not so provide.

We have examined with care the records and the briefs of both sides in this case. In view of the foregoing authorities, the judgment of the trial court is affirmed.

CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., and CULLISON, J., disqualified and not participating.