McALESTER v. OKLAHOMA TAX COMMISSION et al.

No. 26489.    Sept. 19, 1935.

Rehearing Denied Oct. 22, 1935.

W. R. Bleakmore and John Barry for petitioner.

C. D. Cund, for respondent Oklahoma Tax Commission.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen. for respondents Hubert L. Bolen, State Treasurer, and C. C. Childers, State Auditor.

OSBORN, V. C. J. This action was instituted in this court by J. B. McAlester as petitioner, against the Oklahoma Tax Commission, Hubert L. Bolen, State Treasurer, and C. C. Childers, State Auditor, hereinafter referred to as respondents, wherein it is sought to compel respondents to comply with the provisions of House Bill No. 29 (Session Laws 1935, chapter 66, article 11, p. 327) in the distribution and expenditure of funds collected as excise taxes on gasoline. Respondent Oklahoma Tax Commission admits its refusal to comply with the provisions of said act, and as ground therefor contends that the act is ineffective for reasons hereinafter set forth.

The Legislature of 1933, by House Bill No. 416 (chapter 126, Session Laws 1933 page 272), passed an act amending certain prior acts providing for a levy of an excise tax of four cents per gallon on gasoline sold, stored, distributed, or withdrawn from storage within the state, and therein provided for the apportionment thereof in a general way as follows: One cent to be apportioned to each county as theretofore provided by law; 60 per cent. of the remainder to be deposited to the credit of the State Highway Construction and Maintenance Fund for highway purposes therein designated, and 40 per cent. thereof, on and after May 1, 1933, to be deposited in the State Treasury and placed to the credit of a special account to be used exclusively for the payment of indebtedness of the state represented by outstanding interest-bearing warrants, or any other securities authorized by law and based upon such warrants, issued in payment of obligations incurred prior to July 1, 1933, until such indebtedness was paid, and providing that thereafter all of such gasoline excise taxes should be credited to the State Highway Construction and Maintenance Fund for the uses and purposes thereinabove provided. The 15th Legislature, by House Bill No. 29 (Session Laws 1935, chapter 66, article 11, page 327), substantially re-enacted the 1933 Act, with certain modifications hereinafter noticed, but instead of providing for a diversion of 40 per cent. of said funds to said special fund to the payment of the indebtedness above mentioned, provided for the diversion of only 15 per cent. of said gasoline excise taxes to be paid into said special

fund. The Oklahoma Tax Commission, charged with the duty and responsibility of collecting said tax, disregarded the provisions of the last mentioned Act of the 1935 Legislature and in apportioning the funds collected by it since the effective date of said act, apportioned said funds under the 1933 Act.

The Oklahoma Tax Commission raises several questions, but under our view, its second contention is determinative of this proceeding, said contention being that House Bill No. 29, passed by the 15th Legislature, never became a law in that under the admitted facts contained in the record said bill was passed and presented to the Governor on the 24th day of April, 1935, at 7:55 o'clock p. m., and the Governor neither approved nor disapproved said bill, but kept it in his possession until after the Legislature adjourned, said sine die adjournment taking place at 12 o'clock noon on April 30, 1935, after which the Governor transmitted said bill to the Secretary of State accompanied by the following letter:

"I herewith transmit to you Enrolled House Bill No. 29, entitled * * * which was received by me April 24, 1935, at 7:55 o'clock p. m., and which I retained in my possession five legislative days prior to the adjournment of the Legislature without approval or disapproval.

"(Signed) E. W. Marland,
"Governor of Oklahoma."

The Oklahoma Tax Commission asserts, therefore that under the provisions of section 11, article 6, of the Constitution said bill was not presented to the Governor and retained by him for five days, Sunday excepted, prior to the final adjournment of the Legislature, and not having been approved by the Governor, and the Legislature having adjourned prior to the expiration of five days, Sunday excepted, after the presentation of the same to the Governor, the bill did not become effective by reason of the absence of approval by the Governor.

On the other hand, it is contended by petitioner that the Act of 1935 is purely an appropriation measure embracing distinct items, and that said House Bill No. 29 is a comp'ete legislative act and that by virtue of section 12, article 6, of the Constitution, the Governor not having disapproved said act or any item thereof, the act is effective.

It is noted that the Governor certified that he had retained possession of the bill for five "legislative days" prior to the adjournment of the Legislature. He received the bill on April 24th, at 7:55 p. m., and the Legislature

324

adjourned on April 30th at 12 o'clock noon, Sunday having intervened. The constitutional provision (section 11, article 6) does not limit its provisions to "legislative days," and not being so limited, the language used should be construed to mean "calendar days." This is well settled in the case of Okanogan, etc., Indian Tribes v. United States, 279 U. S. 655 73 L. Ed. 894, 49 S. Ct. 463, 64 A. L. R. 1434, and annotation at page 1446, wherein the Supreme Court of the United States had under consideration a similar provision of the Federal Constitution. Under the provisions of section 22, O. S. 1931 the day of presentation of said bill to the Governor should be excluded, and it would necessarily follow that under the provisions of said constitutional provision, if applicable, the Governor had a right to return said bill with his veto to the Legislature at any time prior to midnight of April 30th. It is obvious that the Legislature adjourned twelve hours prior to the expiration of the time granted to the Governor by the Constitution to exercise his constitutional right of veto, and unless said constitutional provision is inapplicable by reason of the nature and character of said enactment, said bill would not become a valid law by reason of the adjournment of the Legislature prior to the expiration of said time, said bill not having been approved by the Governor, Okanogan, etc., Indian Tribes v. United States, supra.

In determining whether or not House Bill No. 29 ever became a completed legislative enactment we must construe sections 11 and 12 of article 6 of the Constitution. These sections provide as follows:

"Section 11. Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it, if not, he shall return it with his objections to the House in which it shall have originated, who shall enter the objections at large in the journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that House shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other House, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that House, it shall become a law, notwithstanding the objections of the Governor. In all such cases, the vote in both Houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the journal of each House, respectively. If any bill or resolution shall not be returned by the Governor within five days

(Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within 15 days after such adjournment.

"Section 12. Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor: if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the House in which the bill shall have orginated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote, according to the rules and limitations prescribed in the preceding section in reference to other bills: Provided, That this section shall not relieve emergency bills of the requirement of the three-fourths vote."

While the exact question presented here has not been specifically determined in this jurisdiction, the above sections of the Constitution have received judicial interpretations which are helpful in determining the exact question presented, especially in view of the fact that many authorities from the courts of other states are reviewed, analyzed, and applied.

In the case of Regents of the State University v. Trapp, 28 Okla. 83, 113 P. 910, it was sought to compel the State Auditor to issue warrants in payment of certain claims for services furnished to the State University. The Auditor refused to issue the warrants for the reason that there were not sufficient funds appropriated to pay the same. In this connection it appeared that the Legislature had made appropriation for the State University and thereafter the Governor attempted to reduce certain items appropriated by the Legislature. In discussing section 11, supra it is said:

"The foregoing provision of the Constitution grants to the Governor the legislative power of the veto. By reason of that section, no bill which is sent to the Governor less than five days before adjournment of the Legislature can become a law without the approval of the Governor, unless passed over his veto; and it cannot become a law with his approval, unless approved by him within 15 days after such adjournment. By the veto power, conferred upon the Governor by this section, he is authorized to approve

or disapprove an act only in toto. He may not approve a part and disapprove a part; but section 12, article 6, of the Constitution provides for an exception, in that by it power is conferred upon the Governor to approve some items of certain bills and disapprove others. That section reads as follows: * * * [quoting sec. 12.]

"The meaning of the foregoing section is not obscure, and the object it was intended to accomplish is apparent. Without that provision, all bills of whatever character could be approved or disapproved by the Governor only in their entirety. But by section 57, art. 5, general appropriation bills may embrace more than one subject; and if the veto power were confined to the whole bill, the Governor might often be required to destroy much good legislation in order to defeat one item of a bill that was bad, or, on the other hand, be compelled to approve a piece of legislation vicious in part, in order to obtain the benefits of the salutary provisions of the same act. It was to enable the Governor to approach in a measure the consideration and approval of a bill carrying items of appropriation with the same power that the members of the legislative departments are authorized to act upon it, in that he may consider and approve some of the items separately without being required to approve them all."

In the case of Carter v. Rathburn, 85 Okla. 251, 209 P. 944, the court discussed the power and authority of the Governor to disapprove an item in the general appropriation bill after the adjournment of the Legislature. In syllabus 2 it is said:

"Section 12, supra, was intended to especially provide for the passage of general appropriation bills containing separate, distinct, and independent items, and to give the Governor authority to cut out certain items of such bill by an express disapproval. * * *"

We quote further from the body of the opinion:

"But in section 12, supra, recognizing the difference between a bill as a whole and a general appropriation bill containing separate, independent items, the Constitution makes express provision as to how such a bill may become a law. The Constitutional Convention seems to have taken cognizance of the fact that general appropriation bills are necessarily made up of numerous, separate, independent items, and in order to relieve such a bill from the restrictions imposed under section 11, supra, and to free it from danger of being defeated as a whole, made provision whereby separate items in such a bill may be disapproved and cut out by the Governor, without affecting the bill in its entirety."

We must determine, therefore, whether the power and authority of the Governor is found in section 11 or section 12, supra, for if section 12 is controlling, the bill would become a law upon the failure of the Governor to disapprove the same or any item thereof. If section 11 is controlling, the bill could not become a law without the approval of the Governor. We therefore pass to an analysis of the bill in question.

At the time of the enactment of House Bill No. 29, chapter 66, article 10, of Session Laws 1935' (House Bill No. 38) specifically amending chapter 126, Session Laws 1933, the latter being an amendment to section 12527, O. S. 1931, was in force. Chapter 66, article 10, supra, amended several sections of prior enactments as therein designated. House Bill No. 29 is a completed amendatory act containing the following title:

"An act amending sections 12527, Oklahoma Statutes 1931, as amended by section 1, of House Bill 416, chapter 126, Session Laws 1933, and by section 1, of House Bill 38, passed by the Fifteenth Legislature of the state of Oklahoma, as approved by the Governor on March 9, 1935; and 12536, O. S. 1931, as amended by section 2, of House Bill 416, chapter 126, Session Laws 1933, levying a gasoline excise tax; providing for the disposition of the revenues arising therefrom; and providing for the payment of the indebtedness of the state represented by outstanding interest-bearing warrants; and declaring an emergency."

By section 1 of House Bill No. 29, which purported to amend section 12527, O. S. 1931, as amended by chapter 126, Laws 1933, and chapter 66, art. 10, Laws 1935, a tax of four cents per gallon upon the sale of each and every gallon of gasoline sold stored, distributed or withdrawn from storage was levied. By comparison it is observed that said amended section is identical with the amendment set forth in section 1 of chapter 66, article 10, and it is contended by petitioner that this portion of the act was a mere reenactment of the prior law. Be that as it may, it cannot well be contended that this provision of the act in question is a bill appropriating a distinct item. But if, as contended by petitioner herein, the Governor could single out part of the act in question and disapprove the provision of the act relating to the 85 per cent. of the designated sum, which petitioner contends is one item of appropriation among several items of appropriation, pursuant to the specific power and authority delegated to the Governor under the provisions of section 12, supra, said

amendment become effective and operative without the necessity for the approval of the Governor. An amendment by substitution would thereby be accomplished, for the act specifically declares that it is an amendment. The tax so levied would be assessable under the later act, and not under chapter 66, article 10, supra, nor under section 12527, O. S. 1931.

We must give effect to each and every provision of the act in determining whether section 11 or section 12, supra, is applicable and controlling. In the prior interpretations of these sections, it is suggested that section 12 was meant to apply only to general appropriation bills. The language of section 11 is sufficiently comprehensive to include each and every bill and resolution which has passed the Senate and House of Representatives where the approval of the Governor is required. It was the plain and obvious intent of the framers of the Constitution that section 12 should be applicable only to bills appropriating various items which might be disapproved by the Chief Executive, and such disapproval would not affect the validity of the various other items which did not receive his disapproval. In other words, the veto power of the Governor, as limited in section 11, was enlarged and extended by section 12. Erskine v. Pyle et al. (S. D.) 213 N. W. 500.

It is manifest that said enactment requires approval, or disapproval, in toto. There is no authority for the approval of a portion thereof and a disapproval of the remainder. It is, therefore, certain that the veto power of the Governor, so far as this act is concerned, is found in section 11, supra, and not in section 12, supra, and that the result of the inaction of the Governor must be determined by applying the provisions of section 11. Consequently, under the facts presented in this case, the bill did not become a law without the affirmative approval of the Governor.

Various other propositions are presented and argued by defendants, but having taken this view of the matter, it is not necessary to consider them.

The writ is denied.

McNEILL, C. J., and BAYLESS, BUSBY. WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, J., absent.