Frank DAVIS, Minority Leader of The House of Representatives, Petitioner,

v.

Victor L. THOMPSON, Director of State Finance, Leo Winters, State Treasurer, and Elmer Graham, Chairman of the Oklahoma Turnpike Authority, Respondents.

No. 66731.

Supreme Court of Oklahoma.

June 30, 1986.

Concurring July 3, 1986.

James A. Williamson, Tulsa, for petitioner.

Michael C. Turpen, Atty. Gen., by Neal Leader, Asst. Atty. Gen., Chief, Civ. Div., Oklahoma City, for respondents.

HODGES, Justice.

This proceeding is brought by Frank Davis, Minority Leader of the Oklahoma House of Representatives, (petitioner) against Victor L. Thompson, Director of State Finance, Leo Winters, State Treasurer, and Elmer Graham, Chairman of the Oklahoma Turnpike Authority (respondents). Petitioner filed an application to assume original jurisdiction and petition for a writ of prohibition. He requests that respondents Thompson and Winters be prohibited from transferring, expending or disbursing funds under the authority of the following appropriation bills: HB 1620, HB 1600, HB 1604, HB 1624, SB 389, SB 390, SB 395, SB 408; and respondent Graham be prohibited from implementing the provisions of HB 1959.

The underlying query prompting this application and petition is whether the Legislature may pass legislation after midnight of the ninetieth day of the regular session of the Legislature under article 5, § 26 of the Oklahoma Constitution, which provides:

"The Legislature shall meet in regular session at the seat of government on the first Tuesday after the first Monday in January of each year, beginning at twelve o'clock noon, or upon such other day as may be provided by law. Each regular session of the Legislature shall be limited to *ninety legislative days.*" (Emphasis added).

Petitioner contends that the challenged legislative actions were passed by the 40th Legislature after midnight of the ninetieth legislative day, June 12, 1986, and are thus null and void, and in violation of art. 5, § 26.

Respondents assert in their response to the application to assume original jurisdiction and petition for a writ of prohibition that this Court should refuse assumption of original jurisdiction on the basis that a determination is unnecessary because prior Oklahoma case law makes it clear that the challenged legislative action was lawful. They concede, however, there is authority supporting this Court's assumption of original jurisdiction in similar situations. Respondents contend that in the event we find it necessary to reach the merits, the Oklahoma Constitution does not impose an artificial restriction on the length of a legislative day, although it restricts the number of "legislative days" that the Legislature may be in session.

We conclude a justiciable controversy exists and is a sufficiently broad public concern. In the exercise of our discretionary power, we hereby sustain petitioner's application to assume original jurisdiction under the doctrine of *publici juris*. *State ex rel. York v. Turpen*, 681 P.2d 763, 765 (Okla. 1984); *Draper v. State*, 621 P.2d 1142, 1145 (Okla.1980); *Wiseman v. Boren*, 545 P.2d 753, 755 (Okla.1976).

The pivotal issue turns on the meaning of the phrase "legislative days" within art. 5, § 26. Petitioner urges the term legislative day is a calendar day in which the Legislature is in session. He further argues the term calendar day is limited to the 24 hour period from midnight to midnight. He thus contends all legislative acts after midnight of the calendar day of June 12, 1986, are null and void.

In the present case it is undisputed that among the bills challenged, the last was voted on and approved by the House at 10:27 a.m. on the calendar day, June 13, 1986. The House Journal reflects such action occurred on the ninetieth day of the Legislature, Thursday, June 12, 1986. Petitioner urges the ninetieth day of the Legislature terminated at midnight on June 12, 1986, and all bills challenged herein were acted upon after the session of the Legislature had expired.

Respondents counter with the argument that because our Constitution does not impose any artificial limitation on the length of a·legislative day, such days are permitted to reasonably extend beyond the stroke of midnight. We agree.

We reach our conclusion as a result of applying the long recognized canon of constitutional construction:

" 'The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and when the·text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.

" 'To get at the thought or meaning expressed in a statute, a contract or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it.' " [1]

■ Because the framers and the people of Oklahoma in adopting the amendment to art. 5, § 26 limiting the number of days in a regular session qualified the word "days" by specifying "legislative days" we are not persuaded that "legislative days" is synonymous with "calendar days." Every provision of the Constitution of Oklahoma is presumed to have been intended for some . useful purpose and every provision should be given effect.[2] It is presumed the adjective "legislative" was intended to be operative and not mere surplusage.

We are also not persuaded that the duration of a legislative day is governed by a calendar day. Webster's Third New International Dictionary (16th ed. 1971) distinguishes between a calendar day and a legislative day. Calendar day is defined as "the time from midnight to midnight"; whereas, a legislative day is defined as "a day during which a legislature is in session: a period of time that commences with the opening of a daily session and ends with adjournment for that day and that may often last more than one calendar day." *Id.* at 316 and 1291.

Decisions of this Court and the Supreme Court of the United States negate petitioner's position that the length of a legislative day is artificially limited by the bounds of a calendar day. In *Indian Tribes v. United States*, 279 U.S. 655, 49 S.Ct. 463, 73 L.Ed. 894 (1929), the United States Supreme Court distinguished the terms legislative days and calendar days in determining whether a bill had properly and timely been returned by the President. The Court stated:

"There is plainly no warrant for adopting the suggestion of counsel for the petitioners ... that the phrase 'within ten days (Sundays excepted),' may be construed as meaning, not *calendar days*, but *'legislative days,' that is, days during which Congress is in legislative session.* ... The word 'days,' when not

---

**1.** *Shaw v. Grumbine,* 137 Okl. 95, 278 P. 311, 315 (1929) (quoting *Lake County v. Rollins,* 130 U.S. 662, 9 S.Ct. 651, 32 L.Ed. 1060 (1889)).

**2.** *Cowart v. Piper Aircraft Corp.,* 665 P.2d 315, 317 (Okla.1983).

qualified, means in ordinary and common usage calendar days." [3]

This Court relied on the above distinction made between legislative days and calendar days set forth in the *Indian Tribes* case in *McAlester v. Oklahoma,* 174 Okl. 322, 50 P.2d 647 (1935). There, the unqualified term "days" contained in a similar provision in the Oklahoma Constitution relating to approval or veto of bills by the Governor, was construed to mean calendar days not legislative days.

In *Shaw v. Carter,* 148 Okl. 57, 297 P. 273, 277 (1931), this Court again recognized and applied the established distinction between legislative days and calendar days in quoting with approval language from the Supreme Court of Wyoming in the case of *White v. Hinton,* 3 Wyo. 753, 30 P. 953, 955 (1892):

> " 'A calendar day, even, is not necessarily a legislative day. A fortiori a fraction of a calendar day is not necessarily, or even presumptively, a legislative day. By a long established practice of congress, *a calendar day is not recognized as limiting a session of any legislative day....* ' " (Emphasis added).

We find *White v. Hinton, supra,* instructive in the resolution of the issue presented in the instant case. In *White,* the validity of an act was challenged as allegedly approved after the statutorily limited 40 day legislative session. The challenged bill, the secretary's records and the legislative journals indicated the bill was passed by the legislature on December 15. The complainant alleged the bill was actually passed before noon on December 16, after the session of the legislature had expired by operation of law. The court found the records of the legislature as conclusive and not subject to impeachment by parol testimony. In so finding it stated: "Dating legislative proceedings of a day's session prolonged into the morning hours of the succeeding day as of the date when the diurnal session began seems to have the sanction of custom in both houses of congress, and such dating is not considered either false or unlawful." The court computed 40 full days from noon, November 6th, when the legislature convened, to noon, December 16th. It refused to recognize a fraction of a day as a whole day in counting "legislative days." Consequently, it found the 40th day of the legislature closed at noon December 16th.

Under the provisions of art. 5, § 26, the Legislature is entitled to 90 full days for actual legislative work and although the first day is constitutionally required to commence at 12 o'clock noon, nowhere is the ninetieth final day required to end at midnight. We thus find no express limitation in our Constitution restricting a legislative day to a calendar day. Nor do we find a limitation by implication. The term calendar day is not found in art. 5, § 26, but rather the explicit term legislative days is used. We think it would be improper to frustrate the intent of the constitutional provision so clearly phrased by altering its clear meaning by adding a judicial gloss to the term legislative days. The Constitution mandates a specific limitation and such limitation upon legislative power is to be strictly construed, and will not be enlarged to include matters not covered or implied by the language used.[4]

In discussing the length of a legislative day, it must be emphasized that *common sense* dictates that the rule of reason should control the length of a legislative day. We do not believe that watches and clocks should be the criterion because such could breed future litigation for there could be as many differences of opinion concerning the arrival of the designated hour for adjournment as there are members of the Legislature. Setting an arbitrary, set time can lead to the resort to subterfuges such as "covering the clock." In light of these considerations, we believe the Legislature, unless prohibited by the Constitution, has the power and right to determine for itself

---

3. *Indian Tribes v. United States,* 279 U.S. 655, 679, 49 S.Ct. 463, 466, 73 L.Ed. 894 (1929). (Emphasis added).

4. *Tate v. Logan,* 362 P.2d 670, 675 (Okla.1961).

when the moment of time has arrived for adjournment, subject to the rule of reason.

■ Although a gross and flagrant violation of the constitutional intent as to the length of a legislative day could occur so as to unduly extend the session beyond the constitutional restriction of 90 legislative days, this is not the case before us here. Based on the uncontested facts, we find no evidence of such violation. On the contrary, the Legislature was endeavoring to wind-up its legislative business of the second regular session. The House Journal reflects the House of Representatives went into session on the ninetieth legislative day, June 12, at 9:30 a.m., and the last bill challenged in this case was voted on and approved the following morning at 10:27 a.m. In the stress of business to conclude all of its affairs before the close of the Second Regular Session of the Fortieth Legislature, it found it necessary to extend the legislative workday beyond the midnight hour. Petitioner concedes that during such time the Legislature had recesses which were essential to enable the legislators to perform their duties as members of various conference committees so as to finalize pending legislation. It is clear the Legislature was continuously and actually engaged in transacting legislative business without any breaks or adjournments until final adjournment. It is apparent there is no basis for any allegation that the Legislature violated the intent of art. 5, § 26 of the Oklahoma Constitution.

■ In our Constitution we have found no express or implied prohibition or limitation upon the power of the Legislature to extend the length of a legislative session past midnight of the ninetieth day. We therefore conclude the unit or length of time of a legislative day cannot be set by this Court. We find that it is for the Legislature to determine how long is reasonably necessary for its members to remain in session on the ninetieth day to transact the business before it, so long as it acts reasonably and in accordance with the intent of art. 5, § 26. The Legislature has a right to conclude all legislative business

it has already begun past the stroke of midnight of the ninetieth legislative day to bring a legislative session to a close so long as it does so reasonably, continuously, and without breaks or adjournments. For the above reasons, we hold the Second Regular Session of the Fortieth Legislature did not unreasonably extend the session past the midnight hour and thus did not violate the intent of the constitutional limitation of 90 legislative days.

ORIGINAL JURISDICTION ASSUMED. WRIT OF PROHIBITION DENIED.

SIMMS, C.J., DOOLIN, V.C.J., and HARGRAVE and SUMMERS, JJ., concur.

LAVENDER and OPALA, JJ., concur in judgment.

WILSON, J., dissents.

KAUGER, J., disqualified.

ALMA WILSON, Justice, dissenting:

The constitutional amendment which forms the subject of the present controversy was passed by the people of the State of Oklahoma by Referendum Petition No. 156, adopted at election held May 24, 1966. The 1966 amendment rewrote this section, which *prior* to such amendment thereto read:

"The members of the Legislature shall meet at the seat of government on the first Monday in January at twelve o'clock noon, in the year next succeeding their election, or upon such other day as may be provided by law."

The above *pre-1966* Section 26 of Article 5 of the Constitution of the State of Oklahoma left to the Oklahoma Legislature the power to determine for itself upon such days as it might remain in session. Most significantly, however, this unlimited legislative discretion was definitively circumscribed in 1966 by a vote of the people. Powers not expressly or by necessary implication granted to the Legislature inhere in the people. *Simpson v. Hill*, 128 Okl. 269, 263 P. 635 (1927). The Oklahoma Constitution, Article 5, Section 26 was amended in 1966 to provide explicitly as follows:

"The Legislature shall meet in *regular session* at the seat of government on the first Tuesday after the first Monday in January of each year, beginning at twelve o'clock noon, or upon such other day as may be provided by law. Each *regular session* of the Legislature *shall be limited to ninety legislative days.*" [Emphasis mine]

The law cited by the majority opinion can give no comfort of legal analysis since it is pre–1966 and therefore pre-amendment authority. Considering that the manifest purpose and intent of the constitutional provision, *supra,* is to set constitutional limits upon the time period in which our State Legislature is authorized to meet in regular session, I cannot condone a strained construction which purportedly authorizes a potentially limitless "regular" legislative session. Neither can I concede to a construction which suspends the edict of our State Constitution in the guise of "prospective application only" theory. *See, Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). Such distortions in constitutional interpretation, I believe, fracture the document itself and defeat the very intent and purpose of the constitutional provision limiting the regular session to ninety legislative days.

A contextual analysis of the constitutional terms implemented in the mandate of § 26 establishes that the adjective term, "legislative", modifies "days" and not visaversa. The specification of *"days"* does *not* denote an *infinite period,* but rather has an identifiable beginning and end. Within the plain meaning of the Constitution, the interval or period called a "day" is not more than twenty–four hours and occurs within and upon a single calendar date. Moreover, "legislative", within the context of § 26, modifies "days", and pertains to the *type of activities* and by whom such acts are performed during each and every of the ninety days certain authorized by this section. Thus, a "legislative day" may constitutionally encompass from seconds, to minutes, to twenty-four hours, *within a calendar date* certain, to the extent that legislative actions transpire thereon.

According to the clear, unambiguous, and plain meaning of the document, it is my opinion that this Court is constrained to strictly construe and define the constitutional legislative day of § 26, thus: "That Period In Which Legislative Acts Transpire On A Specified Date." The construction adopted by a majority of this Court today, I believe, distorts and defeats the plain meaning of the Constitution of this State.

I respectfully dissent.

OPALA, Justice, with whom LAVENDER, Justice, joins, concurring in judgment.

The object of this original proceeding, brought here by a legislator whose standing to institute it is not challenged, is to invalidate "as null and void" by operation of Art. 5, § 26, Okl.Const.,[1] all those acts of the Second Regular Session of the 40th Legislature which were passed by the House of Representatives after that session is claimed to have ended at the stroke of midnight on June 12, 1986. It is not disputed that on the day in question the House of Representatives convened at 9:30 a.m. and *continued in session* until 10:27 a.m. on June 13, the following calendar day, when the last bill under challenge here was passed. The court assumes its original cognizance over the dispute and denies the writ. Its pronouncement holds that the Legislature "has the power ... to determine for itself ..., subject to the rule of reason" how long it must remain in session on the last day to wind up its business.

---

1. The terms of Art. 5, § 26, Okl.Const., provide as follows:

"The Legislature shall meet in regular session at the seat of government on the first Tuesday after the first Monday in January of each year, beginning at twelve o'clock noon, or upon such other day as may be provided by law. *Each regular session of the Legislature shall be limited to ninety legislative days.*" [Emphasis supplied.]

## I

While I concur in the court's decision to invoke its original cognizance of the case and to deny the petitioner's plea for invalidation of the challenged bills, I must categorically recede from that part of its pronouncement which declares that, under the terms of Art. 5, § 26, Okl.Const., either House of our Legislature may conclude its regular session at a point later than the stroke of midnight marking the end of the ninetieth legislative day.

The issue to be resolved is *not* whether *in the course of a session* a legislative day may come to be formed from parts of more than a single calendar day. We are not concerned here with the precise date of some bill's passage. The task before us is rather to decide whether the *length* of the *last day* of the session—its ninetieth legislative day—is to stand limited by a precise measure of time or be left to the *perceived needs* of each House. The court opts for the latter approach, while I am firmly of the view that our fundamental law has provided us, in Art. 5, § 26, with a *textually demonstrable intent* to effect every regular session's conclusion at a fixed point in time—the end of the ninetieth legislative day. *Only* the day the session is to commence may be changed by the Legislature. The framers' intent—plainly apparent from the text of § 26—was thus *to permit statutory regulation of the annual session's beginning but not of its ending day.* What so clearly stands beyond the reach of legislation may not be invaded by a parliamentary ruling in either House.

*No* day, calendar or legislative,[2] may be regarded as utterly open-ended or extending beyond twenty-four hours. Since the Legislature has no power to call itself into session on the ninety-first legislative day, it follows that neither of its Houses may indirectly do that which may not be done directly—i.e. continue in session *beyond* the *end of the ninetieth day.*[3] Inasmuch as the Constitution does not define a legislative day's length in terms different from the 24-hour boundary of a calendar day and the Legislature, by consistent and unbroken practice since the 1966 adoption of Art. 5, § 26, has treated every legislative day to be coextensive with a calendar day, I would declare the end of each regular session to be effected by force of our fundamental law at the stroke of midnight marking the conclusion of the 90th legislative day.

## II

Although I would declare the challenged bills to have been passed *after* the end of the regular session, the offending legislation need not be invalidated. Constitutional pronouncements which operate to disrupt the effective functioning of day-to-day government activities are frequently given prospective application to avoid needless hardship and expenditures of public funds. While I would accede to the petitioner's view that the session ended at midnight marking the conclusion of the last legislative day, I would decline to issue the writ that would render the challenged acts unenforceable or inefficacious.[4]

---

**2.** A legislative day is one during any portion of which the legislature is in session. *Shaw v. Carter,* 148 Okl. 57, 297 P. 273 [1931]. The legislature is not required to sit on consecutive work days, but neither House may, during the session, adjourn for more than three days without the consent of the other. Art. 5, § 30, Okl. Const.

**3.** *Simpson v. Hill,* 128 Okl. 269, 263 P. 635, 56 A.L.R. 706 [1927].

**4.** *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 [1969]; *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 [1969] and *City of Phoenix, Arizona v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 [1970]. See also, *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 [1932].